**Boris DAWSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–01–00084–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Feb. 18, 2002.

Decided Feb. 21, 2002.

Rodney Bert Dowd, Marshall, for appellant.

Richard Berry, Jr., Crim. Dist. Atty., Marshall, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

WILLIAM J. CORNELIUS, Chief Justice.

A jury found Boris Dawson guilty of the murder of Francois Dean and set his punishment at life imprisonment. At the punishment phase of the trial, the State sought to introduce a statement Dawson allegedly made to the police that concerned not the murder for which Dawson was then being tried, but another offense to which Dawson had been linked. Dawson filed a motion to suppress the statement on the basis that it was made involuntarily. The trial court held a hearing, ruled the statement admissible, and made findings of fact and conclusions of law. Dawson contends on appeal that the statement was inadmissible.

■ The determination of whether a statement is voluntary is a mixed question of law and fact, i.e., an application of law to a fact question. *Garcia v. State*, 15 S.W.3d 533, 535 (Tex.Crim.App.2000); *see* TEX.CODE CRIM. PROC. ANN. art. 38.22, § 6 (Vernon 1979). As a general rule, we afford almost total deference to a trial court's determination of the historical facts concerning the making of the statement so long as the record supports them, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We should afford the same deference to a trial court's rulings on mixed questions of law and fact if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. We may review de novo mixed questions of law and fact that do not fall within this category. *See id.* Because ordinarily the determination of whether a statement is voluntary turns almost entirely on the evaluation of credibility and demeanor, we will afford almost total deference to the trial court's resolution of this type of mixed question of law and fact. *See Wyatt v. State*, 23 S.W.3d 18, 23 (Tex. Crim.App.2000); *Garcia v. State*, 15 S.W.3d at 535; *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990).

■ A statement may be deemed involuntary if there has been noncompliance with Article 38.22 of the Texas Code of Criminal Procedure; noncompliance with the dictates of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); or a violation of due process or due course of law because the statement was not freely given (e.g., coercion, improper influences, incompetence). *Wolfe v. State*,

917 S.W.2d 270, 282 (1996). Dawson did not specify at trial on what basis he was alleging involuntariness. Nevertheless, the factors involved in determining involuntariness for due process purposes do not materially differ from those relevant to deciding whether an inculpatory statement was compelled contrary to the United States Constitution's Fifth Amendment privilege against self-incrimination. U.S. CONST. amend. V; *Colorado v. Connelly,* 479 U.S. 157, 169–70, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *Griffin v. State,* 765 S.W.2d 422, 429–30 (Tex.Crim.App.1989).

The law surrounding the issue of voluntariness of a statement is well established. We judge the voluntariness of a statement by looking at the totality of the circumstances surrounding the making of the statement, including both the characteristics of the accused and the details of the interrogation. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Creager v. State,* 952 S.W.2d 852, 855 (Tex.Crim.App.1997). A statement is voluntarily made if it is the product of an essentially free and unconstrained choice by its maker. *See Schneckloth v. Bustamonte,* 412 U.S. at 225; *State v. Terrazas,* 4 S.W.3d 720, 723 (Tex.Crim.App.1999). Conversely, a statement is involuntary for purposes of federal due process if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker. *See Alvarado v. State,* 912 S.W.2d 199, 211 (Tex.Crim.App.1995). Once a defendant moves to suppress a statement on the ground of involuntariness, the due process guarantee requires the trial court to hold a hearing outside the presence of the jury concerning the admissibility of the statement. *Jackson v. Denno,* 378 U.S. 368, 380, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). TEX.

CODE CRIM. PROC. ANN. art. 38.22, § 6 and TEX.R. EVID. 104(c) have the same requirement. At this hearing, the state has the burden of proof to show by a preponderance of the evidence that the statement was freely and voluntarily made. *See Griffin v. State,* 765 S.W.2d 422, 429 (Tex. Crim.App.1989).

Dawson contends his statement was involuntary because: 1) he did not write it himself; 2) he did not fully understand his rights; 3) he requested, but was denied, an attorney; 4) he was coerced and intimidated into making the statement, and he was ignored when he stated that he did not wish to make a statement; 5) the police failed to make a videotape or audiotape of the session; 6) he did not effectively read the statement because he cannot read or write the English language; and 7) he was promised a lower bond and lower criminal charge if he confessed, and he relied on such promise. Darryl Griffin, the police officer who took Dawson's statement, testified at the hearing, as did Dawson himself. Thus, the trial court's conclusion that Dawson's statement was voluntary was based on a direct evaluation of the witnesses' credibility and demeanor.

Griffin testified that before questioning and in the presence of a special agent for the Federal Bureau of Investigation, he verbally gave Dawson each particular warning necessitated by *Miranda* and Article 38.22. Dawson indicated that he understood those rights and that he could read and write. After Dawson was handed a form entitled "Voluntary Statement" at the top of which the same warnings were repeated, Dawson read and initialed alongside each warning. Griffin then wrote Dawson's statement as it was related to him, and Dawson signed the statement after reading it and making corrections. According to Griffin, at no time did he promise Dawson anything of value or

say anything to coerce or force Dawson to give a statement; and at no time did Dawson request an attorney or indicate that he wished to terminate the interview. The interview took place in Griffin's office.

Dawson testified that he explicitly told the police he did not want to make a statement, that he wanted a lawyer, and that he had stated as much to other officers in addition to Griffin. He further testified that Griffin told him that they were going to upgrade the charges to first-degree murder, and that Griffin also suggested that if Dawson cooperated and gave a statement, Dawson could get a lower bond. At some point in the interrogation, Griffin handed Dawson the written statement of Russell Leonard, who was also charged with the murder of Francois Dean. Dawson read Leonard's statement. Dawson testified that although he initialed each warning on the voluntary statement form and signed it at the end, most of the words written therein were not his, but rather were Griffin's and the special agent's words. Dawson cooperated only to get a lower bond.

Most of Dawson's complaints on appeal, enumerated above, are purely a question of witness credibility and demeanor. This is true regarding Dawson's contentions that he did not fully understand his rights, that he was coerced and intimidated into making the statement, that he was ignored when he stated he did not wish to make a statement, and that he was promised a lower bond and a lower criminal charge if he confessed. The trial court made specific findings of fact that these contentions were not true, and such findings are supported by Griffin's testimony. We will therefore not disturb them.

Dawson's contention that involuntariness is shown by the fact that he did not write the statement himself is contrary to the express provisions of Article 38.22, which allow statements even if only signed by an accused. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22, § 6. His contention that the interrogation had to be videotaped or audiotaped is unsupported by any statute or case law. Here, we are not dealing with the admission of an oral statement. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3 (Vernon Supp.2002). While the absence of taping where equipment is readily available may be relevant to the credibility of a witness testifying about a statement, measuring credibility is the province of the trial court. Finally, Dawson's contention that he cannot read or write the English language is belied by his own testimony that he read Leonard's statement.

The evidence supports the trial court's finding that no coercive conduct occurred with respect to the taking of Dawson's statement. Nothing in the totality of these circumstances suggests that Dawson's statement was made involuntarily.

The judgment is therefore affirmed.