MILLER v. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-133-CR

RODNEY JAMES MILLER APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Rodney James Miller appeals his conviction for possession of methamphetamine of 400 grams or more with the intent to deliver. The jury  found Appellant guilty, and the trial court sentenced him to twenty-eight years’ confinement.  In five points, Appellant asserts that the trial court committed reversible error by failing to suppress his confession, by admitting the drugs seized at his house because the search was based on an invalid search warrant affidavit, by admitting into evidence Appellant’s prior conviction for impeachment, by failing to submit the lesser included offense of possession four to two hundred grams of a controlled substance, and by refusing to allow evidence of his cooperation with law enforcement.  We affirm.

FACTUAL BACKGROUND

On September 11, 2003, surveillance officers spotted Appellant leaving the home of a drug dealer and requested that a uniformed officer conduct a traffic stop on Appellant if the officer observed him committing a traffic offense.  Following a traffic stop, during which Appellant was arrested, officers determined that the car belonged to Katy Miller, Appellant’s wife and a passenger in the car.  The officers obtained Miller’s permission to search the car and found $6,087 in cash, a glass pipe containing a substance that appeared to be burnt methamphetamine residue, marijuana, and methamphetamine.  Miller was arrested for possession of a controlled substance.

On September 11, 2003, Investigator Stan Davis approached Appellant about becoming a “Cooperating Individual” for police (hereinafter “confidential informant”).  Appellant initially rejected Investigator Davis’ offer, but then on September 12, 2003, Appellant requested to meet with Investigator Davis for a second time.  In exchange for a dismissal of the charges against Appellant and Miller, Appellant agreed to become a confidential informant.  Appellant met with officers on September 16, 2003, and made a statement implicating himself in a crime.  Based on this information, officers obtained a search warrant for Appellant’s residence, confiscated 1300 grams of methamphetamine from his house, and arrested him.  A more detailed rendition of the facts is set forth below in the discussion of suppression of the evidence.

SUPPRESSION OF EVIDENCE

In his first point, Appellant asserts that the trial court committed reversible error by failing to suppress his confession because the confession was obtained in violation of 
Miranda
.
(footnote: 2)  In his second point, Appellant contends that the trial court erred by admitting the drugs seized at his house because the search warrant affidavit was based on illegally obtained evidence.

1. Standard of Review

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  Therefore, we give almost total deference to the trial court’s rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
State v. Ballman
, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref’d).  But when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court’s rulings on mixed questions of law and fact.  
Estrada v. State
, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); 
Johnson
, 68 S.W.3d at 652-53.

When reviewing a trial court’s ruling on a mixed question of law and fact, the court of appeals may review de novo the trial court’s application of the law of search and seizure to the facts of the case.  
Estrada
, 154 S.W.3d at 607.  When there are no explicit findings of historical fact, the evidence must be viewed in the light most favorable to the trial court’s ruling.  
Id
.

We must uphold the trial court’s ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.  
Armendariz v. State
, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), 
cert. denied
, 541 U.S. 974 (2004); 
Ross
, 32 S.W.3d at 856; 
Romero
, 800 S.W.2d at 543.  

2. Evidence Presented

Appellant was arrested on September 11, 2003.  That day, Investigator Davis interviewed him in the jail.  Before the conversation, Investigator Davis read Appellant his 
Miranda
 rights.  Investigator Davis then discussed the facts of his arrest and asked Appellant whether he wanted to “help himself out with” the charges that were pending against him.  Appellant declined Investigator Davis’ request that he become a confidential informant on that day.

On September 12, 2003, jail personnel informed Investigator Davis that Appellant requested to speak with him again.  Investigator Davis met with Appellant, and Appellant signed an agreement with Investigator Davis to become a confidential informant.  The confidential informant agreement did not contain 
Miranda 
warnings, but Appellant testified that he was read his 
Miranda
 rights before he met with Investigator Davis for the second time.

On September 16, 2003, Investigator Davis contacted Appellant and requested that he meet him in a parking lot of a home improvement store to discuss what Appellant “knew in the drug world and what he would be able to do for [the police officers].”  Additionally, Drug Enforcement Administration Officer George Courtney requested that Investigator Davis contact Appellant because Appellant had been seen at the house of Manny Cortez and Officer Courtney, who had been investigating Cortez, was interested in learning information about Cortez from Appellant.  Appellant arrived at the specified location with his wife in his car.  Appellant got into Investigator Davis’ vehicle with Investigator Davis, Officer George Courtney, and Tarrant County Narcotics Officer Chad Peabody.

During the course of the interview, Appellant’s cell phone kept ringing. Officer Courtney asked Appellant who was calling, and Appellant informed them that a man by the name of Mike Nichols was calling him from a certain phone number belonging to Britney Smart.  In the course of Officer Courtney’s investigation of drug trafficking, the name Mike had come up, as well as the name Britney Smart.  Therefore, Officer Courtney asked Appellant why Nichols was contacting him.  Appellant responded that Nichols was calling to inquire about $5,000 cash that Manny Cortez gave to Appellant the previous day in exchange for a pound of methamphetamine for the delivery he had made on September 11, 2003.

Investigator Davis then explained to Appellant that he had violated his confidential informant agreement that he signed by conducting an illegal act without his approval and because it was a violation of the agreement to continue an offense while being under contract as a confidential informant. Investigator Davis then exited the vehicle to advise his supervisor that Appellant had told him that he had obtained a large sum of money from drug proceeds and that the money was at Appellant’s house.  Investigator Davis testified that he became suspicious that Appellant might have something else at the house. He returned to the vehicle and asked Appellant whether he had any drugs at his house.  Appellant responded that he had four pounds of methamphetamine there.

Investigator Davis related this information to his supervisor in order to obtain a search warrant for Appellant’s house.  Investigator Davis read Appellant’s wife her 
Miranda
 rights, informed her about the conversation that he had with Appellant, and told her that he was in the process of obtaining a search warrant for her residence.  The officers then went to Appellant’s house with Appellant and his wife and secured the location while they waited for a search warrant.  Upon searching Appellant’s house, the officers found containers and plastic bags containing what appeared to be a controlled substance, which was later identified as methamphetamine weighing a total of 1300 grams.  Only after Appellant showed the officers the location of the methamphetamine and money did they inform him of his 
Miranda
 rights.

3. Custodial Interrogation

The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.  
Miranda
, 384 U.S. at 444, 86 S. Ct. at 1612.  Additionally, article 38.22 of the code of criminal procedure applies only to statements made as a result of a custodial interrogation.  
See 
Tex. Code Crim. Proc. Ann. 
art. 38.22 (Vernon 2005) (providing that no statement made as a result of a custodial interrogation shall be admissible against the accused in a criminal proceeding unless, among other things, prior to the giving of the statement, the statutory warnings are administered to the accused). 

Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.  
Miranda
, 384 U.S. at 444, 86 S. Ct. at 1612. If an investigation is not at an accusatorial or custodial stage, a person’s Fifth Amendment rights have not yet come into play and the voluntariness of those rights is not implicated.  
Melton v. State
, 790 S.W.2d 322, 326 (Tex. Crim. App. 1990). 

Four factors are relevant to determining whether a person is in custody: (1) probable cause to arrest, (2) subjective intent of the police, (3) focus of the investigation, and (4) subjective belief of the defendant.  
Dowthitt v. State
, 931

S.W.2d 244, 254 (Tex. Crim. App. 1996).  Under 
Stansbury v. California
, factors two and four have become irrelevant except to the extent that they may be manifested in the words or actions of police officers; the custody determination is based entirely upon objective circumstances.  
Dowthitt
, 931 S.W.2d at 254; 
Stansbury v. California
, 511 U.S. 318, 322-23, 114 S. Ct. 1526, 1528-29 (1994).  Becoming the focus of the investigation does not equate to custody for purposes of determining whether a statement is voluntarily given.  
Meek v. State
, 790 S.W.2d 618, 621 (Tex. Crim. App. 1990).

As a general rule, when a person voluntarily accompanies law enforcement to a certain location, even though he knows or should know that law enforcement suspects that he may have committed or may be implicated in committing a crime, that person is not restrained or “in custody.”  
Livingston v. State
, 739 S.W.2d 311, 327 (Tex. Crim. App. 1987), 
cert. denied
, 487 U.S. 1210 (1988).  More specifically, so long as the circumstances show that a person is acting only upon the invitation, request, or even urging of law enforcement, and there are no threats, either express or implied, that he will be taken forcibly, the accompaniment is voluntary, and such person is not in custody.  
Anderson v. State
, 932 S.W.2d 502, 505 (Tex. Crim. App. 1996),
 cert. denied
, 521 U.S. 1122 (1997).  However, the mere fact that an interrogation begins as noncustodial does not prevent custody from arising later; police conduct during the encounter may cause a consensual inquiry to

escalate into custodial interrogation.  
Ussery v. State
, 651 S.W.2d 767, 770 (Tex. Crim. App. 1983).

There are at least four general situations in which a suspect’s detention may constitute custody:  (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest
(footnote: 3) and law enforcement officers do not tell the suspect that he is free to leave.  
Dowthitt
, 931 S.W.2d at 255.  
Stansbury 
indicates that in the first through third situations, the restriction upon freedom of movement must 

amount to the degree associated with an arrest as opposed to an investigative detention.  
Id. 
 Concerning the fourth situation, the officers’ knowledge of probable cause must be manifested to the subject, and such manifestation could occur if information sustaining the probable cause is related by the officers to the suspect or by the suspect to the officers.  
Id.
; 
see Ruth v. State
, 645 S.W.2d 432, 436 (Tex. Crim. App. 1979) (holding that a suspect’s “statement that he had shot the victim immediately focused the investigation on him and furnished probable cause to believe that he had committed an offense; [a]fter that time, the continued interrogation must be considered a custodial one”).  However, situation four will not automatically establish custody; rather, custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest.  
Dowhitt
, 931 S.W.2d at 255.  Additionally, the length of time involved is an important factor to consider in determining whether a custodial interrogation occurred.  
Id. 
at 256.

The record reflects that Appellant voluntarily met police officers in the parking lot of the home improvement store. 
 Appellant arrived at the request of the officers, and he was not handcuffed.  The fact that Appellant brought his wife to the meeting demonstrates that he did not believe he was under arrest at the time he met with the officers to discuss how he would be able to assist the officers as a confidential informant.  Initially, the police encounter was noncustodial.  
See Anderson
, 932 S.W.2d at 505.

Officer Courtney then questioned Appellant regarding the phone calls that he was receiving, and Appellant informed him that Mike Nichols was calling him from a phone number belonging to Britney Smart.  Officer Courtney had come across these names through the course of his investigation, so Officer Courtney  asked Appellant why Nichols was attempting to contact him.  Appellant responded that Nichols was calling to inquire about the $5,000 cash that Cortez gave to Appellant the previous day in exchange for a pound of methamphetamine that Appellant had delivered to Cortez on September 11, 2003.  Once Investigator Davis received that information, he informed Appellant that he had breached his confidential informant agreement that he had signed by conducting an illegal act without his approval.  At that point, Appellant had become the focus of the investigation, and he had relayed information to officers that amounted to probable cause to arrest.  This would lead a reasonable person to believe that his freedom of movement has been restricted in a significant degree. 
 See Dowthitt
, 931 S.W.2d at 255.  Thus, Appellant was in custody when Investigator Davis subsequently asked whether he had any drugs located at his house and Appellant informed him that he had four pounds of methamphetamine located there.

4. Compliance with Miranda

The safeguards established in 
Miranda 
come into play when a person in custody is subjected to either express questioning or its functional equivalent.  
Rhode Island v. Innis
, 446 U.S. 291, 300, 100 S. Ct. 1682, 1689 (1980).  A confession may be deemed “involuntary” under three different theories: (1) failure to comply with article 38.22, (2) failure to comply with the dictates of 
Miranda
, or (3) failure to comply with due process or due course of law because the confession was not freely given as a result of coercion, improper influences, or incompetency.  
Wolfe v. State
, 917 S.W.2d 270, 282 (Tex. Crim. App. 1996).  The burden of proof at the hearing on admissibility is on the prosecution, which must prove by a preponderance of the evidence that the defendant’s statement was given voluntarily. 
 Alvarado v. State
,  912 S.W.2d 199, 211 (Tex. Crim. App. 1995).  The trial court determined that Appellant voluntarily gave the statements to police.

Appellant was given his 
Miranda
 warnings by Investigator Davis on September 12, 2003, the day that he agreed to become a confidential informant.  Therefore, we must determine whether these 
Miranda
 warnings were still effective for the September 16, 2003 meeting with Investigator Davis.  Appellant cites 
Jones v. State
 for the proposition that 
Miranda 
warnings given to Appellant prior to September 16, 2003, were too remote, but the State asserts that 
Jones
 actually supports the State’s position on appeal.  
See
 119 S.W.3d 766, 771 (Tex. Crim. App. 2003).

In 
Jones
, an officer read the appellant read his 
Miranda 
rights during the first interview that was conducted on the day that he was arrested for the murder of Berthena Bryant.  
Id.
  The appellant denied involvement in the murder that he was arrested for, claiming an alibi.  
Id.
  The next day, after being informed of his 
Miranda 
rights again, he took a polygraph examination.  
Id.
  When the alibi information did not check out and the polygraph indicated deception, the officer again read him his 
Miranda
 rights.  
Id.
  Then, the appellant gave an incriminating statement.  
Id.
  Nine or ten days later, the appellant made statements to a Texas Ranger implicating himself in two extraneous murders, and he complained when these statements were introduced at the punishment phase of trial.  
Id.
  The court determined that the 
Miranda 
warnings from the previous interrogations did not apply to the Texas Ranger’s interrogation because he was not the same officer who had originally, or at any later time, given the appellant 
Miranda 
warnings, he questioned the appellant about an entirely different offense than the offense for which the appellant had been given 
Miranda
 warnings nine or ten days prior, and there was no evidence that he asked the appellant whether he had been warned by other officers.  
Id
. at 773-74 n.13.  Even in light of the passage of nine or ten days, the court noted that “the cases cited by the concurrence are very appropriate to, and might well be dispositive of, this issue had the interrogation been [by the initial officer] about Ms. Bryant’s murder.”  
Id.
 at 773 n.13 (citations omitted).

In the present case, Investigator Davis was the officer who read Appellant his 
Miranda
 rights on September 11, 2003.  Investigator Davis again read Appellant his 
Miranda
 rights during the September 12, 2003 interview where Appellant agreed to become a confidential informant.  Although Appellant was not given his 
Miranda
 rights during the meeting on September 16, 2003, he met with the same officer who had read his 
Miranda 
rights only four days earlier.  The questioning on both occasions dealt with the same subject–Appellant acting as a confidential informant.  There was no need for the officers to give additional 
Miranda
 rights before Investigator Davis conducted further discussions with Appellant regarding his roll as a confidential informant.  
Maguire v. United States
, 396 F.2d 327, 331 (9th Cir. 1968) (holding that warnings given three days prior not too remote when same offense and different officer);
 
Gorman v. United States
, 380 F.2d 158, 164 (1st Cir.1967) (holding that repetition of 
Miranda 
warnings before requesting consent to search unnecessary because there is “no reason in policy or precedent automatically to borrow a procedure adapted to one set of constitutional rights at one stage of a criminal proceeding and apply it to a quite different right, serving quite different purposes, at another stage”)
; 
See Bagley
, 509 S.W.2d 332, 335 (Tex. Crim. App. 1974) (stating that the same assistant district attorney gave multiple warnings and all questioning concerned one offense); 
Johnson v. State
, 56 Ala. App. 583, 558, 324 So.2d 298, 302 (Ala. Crim. App.), 
cert. denied
, 295 Ala. 407, 324 So.2d 305 (1975) (holding that warnings were not too remote when same officer, same offense, and reminder about warnings given three days earlier)
. 
 Therefore,  we hold that the trial court did not abuse its discretion by admitting Appellant’s statements because they were not obtained in violation of 
Miranda
.  Accordingly,  we overrule his first point. 

In his second point, Appellant asserts that the trial court erred in admitting the drugs seized at Appellant’s house because the search warrant affidavit contained the oral statements that he made to the narcotics officers on September 16, 2003.  Because we determine that these statements were not obtained in violation of 
Miranda
, we overrule Appellant’s second point.

EVIDENCE OF APPELLANT’S PRIOR CONVICTION

In his third point, Appellant complains that the trial court erred in admitting into evidence his prior conviction for impeachment purposes because  the probative value of his prior conviction did not outweigh the prejudicial effect of the admission.  The State asserts that the trial court did not abuse its discretion in admitting the impeachment evidence. 

The State questioned Appellant about a final conviction for a felony offense of possession of a controlled substance of one gram or more but less than four grams on July 25, 1997.  Appellant acknowledged that he was convicted of the offense, and his counsel requested a limiting instruction from the court.  The court instructed the jury that the fact that a witness has been convicted of a felony crime in the past is admissible solely for purposes of attacking the credibility of the witness and informed the jury members that they are not to consider such evidence as tending to prove or proving the guilt of the defendant for the offense for which he was on trial.

The standard of review for a trial court’s admission of evidence is abuse of discretion, and wide discretion is afforded to the trial judge. 
 Theus v. State
, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992) (en banc). The trial court’s decision should be reversed on appeal only if there is a showing of a clear abuse of discretion.  
Id. 
at 881.  Only if the court’s decision falls outside the “zone of reasonable disagreement,” has it abused its discretion. 
 Rankin v. State
, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996) (op. on reh’g); 
Montgomery v. State
, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’g).

Generally, a defendant who testifies may be impeached by evidence of a prior conviction if the crime was a felony or involved moral turpitude and the court determines that the probative value of admitting the evidence outweighs its prejudicial effect.  
Tex. R. Evid.
 609(a); 
Theus
, 845 S.W.2d at 879.  Both Appellant and the State cite 
Theus 
as controlling authority on the admissibility of this conviction for impeachment purposes.  
See
 845 S.W.2d at 879.  In 
Theus
, the court of criminal appeals set forth five nonexclusive factors the trial court should consider in the application of Rule 609 and in weighing the probative value of a prior conviction against its prejudicial effect, including: (1) the impeachment value of the prior crime, (2) the temporal proximity of the past crime relative to the charged offense, and the witness’ subsequent history, (3) the similarity between the past crime and the offense being prosecuted, (4) the importance of the defendant’s testimony, and (5) the importance of the credibility issue.  
Id. 
at 880.

Crimes that involve deception have a higher impeachment value than crimes involving violence, the latter having a higher potential for prejudice. 
 Id. 
at 881.  The State questioned Appellant regarding his prior conviction for possession of a controlled substance.  Possession of a controlled substance does not involve untruthfulness or deception; thus, the first factor weighs against its admission.  
See
 
Dale v. State
, 90 S.W.3d 826, 830 (Tex. App.—San Antonio 2002, pet. ref’d).

Also, the second factor will favor admission if the past crime is recent and if the witness has demonstrated a propensity for running afoul of the law.  
Theus
, 845 S.W.2d at 881.  Appellant’s prior conviction for a controlled substance became final on July 25, 1997, when Appellant’s probation was revoked, and it occurred recently relative to the instant offense, which occurred on September 16, 2003.  
See id.
 (stating that conviction for arson that was final in 1985 was recent to the current offense that occurred in 1990).  Additionally, the fact that Appellant’s probation for the prior conviction for a controlled substance was revoked because Appellant failed a urinanalysis demonstrates that Appellant has a propensity for running afoul of the law.

The similarity between Appellant’s prior conviction for possession of a controlled substance and the instant offense of possession of a methamphetamine with intent to deliver militates against the admission of the prior conviction.  
See id.
  However, the trial court gave a prompt limiting instruction, which minimizes the prejudice associated with this factor. 
 
See Simpson v. State
, 886 S.W.2d 449, 453  (Tex. App.—Houston [1st Dist.]1994, pet. ref’d); 
see also Gamez v. State,
 737 S.W.2d 315, 324 (Tex. Crim. App. 1987) (stating that it must be presumed that the jury followed the court’s charge).

The last two factors are related, because both depend on the nature of a defendant’s defense and the means available to him of proving that defense.  When the case involves the testimony of only the defendant and the State’s witnesses, the importance of the defendant’s credibility and testimony increases.
 Theus
, 845 S.W.2d at 881.  As the importance of the defendant’s credibility escalates, so will the need to allow the State an opportunity to impeach the defendant’s credibility.  
Id. 
 However, in situations where a defendant presents an alibi defense and can call other witnesses, the defendant’s credibility is not likely to be a critical issue.  
Id.

Although Appellant’s father took the stand to testify on Appellant’s behalf, the substance of his testimony related exclusively to a phone call he received from Appellant when Appellant was in jail on September 11, 2003.  His father did not testify as to any alibi, nor did he testify that Appellant was not in possession of the methamphetamine that was found in Appellant’s house on September 16, 2003.  Additionally, the State declined to cross-examine Appellant’s father.  Thus, although the case did not involve solely the testimony of the defendant and the State’s witnesses, the fourth factor weighs in favor of the admission of the conviction because Appellant’s credibility remained a critical issue and the importance of his testimony increased.  This proposition is also bolstered by the fact that  Appellant’s testimony at trial differed greatly from the officer’s testimony at trial.  Accordingly, the need to allow the State the opportunity to impeach Appellant’s credibility escalated.  
See id.

The only factor weighing against admissibility of the evidence is the lack of impeachment value of the prior conviction.  Therefore, we hold that the trial court did not abuse its discretion by allowing the State to present evidence of Appellant’s prior conviction for impeachment purposes.  We overrule Appellant’s third point.

LESSER INCLUDED OFFENSE INSTRUCTION

In his fourth point, Appellant contends that the trial court erred by failing to submit a jury instruction on the lesser included offense of possession of less than four hundred grams of methamphetamine.  Appellant argues that the basis for his complaint is his testimony that he took one or two grams of methamphetamine for his personal use, but the remainder of the methamphetamine that officers found at his house belonged to someone else. We use a two-pronged test to determine whether a defendant is entitled to an instruction on a lesser included offense.  
Rousseau v. State
, 855 S.W.2d 666, 672-73 (Tex. Crim. App.), 
cert. denied
, 510 U.S. 919 (1993); 
Royster v. State
, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981).  First, the lesser included offense must be included within the proof necessary to establish the offense charged.  
Salinas v. State
, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005);  
Rousseau
, 855 S.W.2d at 672-73; 
Royster
, 622 S.W.2d at 446.  Second, some evidence must exist in the record that would permit a jury to rationally find that if appellant is guilty, he is guilty only of the lesser offense.  
Salinas
, 163 S.W.3d at 741; 
Rousseau
, 855 S.W.2d at 672-73; 
Royster
, 622 S.W.2d at 446. 

A lesser included offense is defined both in terms of the offense charged and the facts of the case:  “An offense is a lesser included offense if . . . it is established by proof of the same or less than all the facts required to establish the commission of the offense charged.”  
Tex. Code Crim. Proc. Ann
. art. 37.09(1) (Vernon 1981).  Therefore, our analysis of whether an offense is a lesser included offense of the charged offense must be made on a case-by-case basis.  
Bartholomew v. State
, 871 S.W.2d 210, 212 (Tex. Crim. App. 1994); 
Day v. State
, 532 S.W.2d 302, 315-16 (Tex. Crim. App. 1976) (op. on reh’g).  It does not matter if the charged offense can be established on a theory that does not contain the lesser offense; the issue is whether the State, when presenting its case to prove the offense charged, also includes proof of the lesser included offense as defined in article 37.09.  
See Bartholomew
, 871 S.W.2d at 212; 
Broussard v. State
, 642 S.W.2d 171, 173 (Tex. Crim. App. 1982).

Article 37.09, in relevant part, states that an offense is a lesser-included offense if “it is established by proof of the same or less than all the facts required to establish the commission of the offense charged.”  
Tex. Code Crim. Proc. Ann.
 art. 37.09.  The only difference between possession and possession with intent to deliver is the element of intent to deliver.  The evidence that a defendant was in physical possession and control of the controlled substances are facts that are also necessary to establish the charged offense of possession with intent to deliver.  
Pickens v. State
, 165 S.W.3d 675, 679 (Tex. Crim. App. 2005).  The lesser offense of possession could be proved by the same facts necessary to establish possession with intent to deliver.  
Id.
  Additionally, the facts required to prove that Appellant possessed less than 400 grams of methamphetamine are the same facts required to prove that Appellant possessed more than 400 grams of methamphetamine.  Therefore, the first requirement has been met. 

Secondly, evidence must exist in the record that would permit a jury to rationally find that if the appellant is guilty, he is guilty only of the lesser offense.  
Salinas
, 163 S.W.3d at 741.  When conducting a lesser-included-offense analysis, a statement made by a defendant cannot be plucked out of the record and examined in a vacuum.  
Ramos v. State
, 865 S.W.2d 463, 465 (Tex. Crim. App. 1993).  Appellant’s testimony as a whole established that he was in possession of the entire four pounds.  Although he contends that the methamphetamine belonged to another person, the record establishes that the four pounds of methamphetamine were unquestionably located at his house and that he had  care, custody, and control of the methamphetamine.  
See Salazar v. State
, 95 S.W.3d 501, 504 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d) (stating that in order to prove possession, the State must prove (1) that the defendant exercised care, custody, control, or management over the contraband and (2) that the defendant knew that what was possessed was contraband).  Additionally, Appellant acknowledged that the amount of methamphetamine that officers found at his house would not be consistent with personal use.  Thus, the record does not establish that if Appellant is guilty, he is guilty only of the lesser offense.  Accordingly, we overrule Appellant’s fourth point.

EVIDENCE OF WILLINGNESS TO FURTHER COOPERATE WITH POLICE

In his fifth point, Appellant asserts that the trial court erred in refusing to allow him to present evidence of his cooperation with state and federal authorities after his indictment to show his intention to abide by the confidential informant agreement. 

We review a trial court’s ruling to admit or exclude evidence under an abuse of discretion standard.  
Rankin
, 974 S.W.2d at 718; 
Montgomery, 
810 S.W.2d at 391.  If the court’s decision falls outside the “zone of reasonable disagreement,” it has abused its discretion.  
Rankin
, 974 S.W.2d at 718; 
Montgomery
, 810 S.W.2d at 391.

Citing 
Crenshaw v. State
, Appellant contends that the testimony regarding his willingness to further cooperate with police after he was arrested is admissible to correct a false impression.  
See 
125 S.W.3d 651, 656 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d) (stating that if a witness creates a false impression of law abiding behavior, she “opens the door” on her otherwise irrelevant past criminal history, and opposing counsel may expose the falsehood).  Evidence that is otherwise inadmissible may be admitted to correct a false impression left by the questioning of a witness.  
Wheeler v. State
, 67 S.W.3d 879, 885 (Tex. Crim. App. 2002). 

Appellant argues that “the State went to great lengths to show that Appellant violated his confidential informant agreement and implied that he never intended to comply with it.”  He then argues that the evidence that he continued to comply with the agreement even after he was arrested and indicted should have been admitted into evidence in order to correct a false impression that the State had given to the jury.  He does not point to a single portion of the record where the testimony creates a false impression that he never intended to comply with the confidential informant agreement.

Additionally, the evidence presented at trial shows that any impression on the part of the jury that Appellant violated the terms of the confidential informant agreement was a 
true
 impression, rather than a false impression.  The cooperating individual agreement that Appellant signed provides as follows:

Any dealing, transfer, sale, or possession of any illegal drug, illegal controlled substance or marijuana by the Cooperating Individual without the 
express and current permission
 
of the investigating officer or his supervisor will be considered not only a violation of the criminal laws of this State, but also a violation of the terms of this agreement. [Emphasis in original].

The evidence presented shows that after Appellant signed this agreement, he obtained $5,000 in cash from a previous methamphetamine sales transaction, and he possessed approximately 1300 grams of methamphetamine. Accordingly, Appellant’s contention that the State presented a false impression that Appellant violated the cooperating individual agreement is without merit.  Therefore, the trial court acted within its discretion in refusing to admit the testimony that Appellant continued to cooperate with the police.  We overrule Appellant’s fifth point.

CONCLUSION

Having overruled Appellant’s five points, we affirm the judgment of the trial court. 

PER CURIAM

PANEL B: HOLMAN, DAUPHINOT, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  May 4, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
See Miranda v. Arizona
, 384 U.S. 436, 86 S. Ct. 1602 (1966).

3:
Probable cause to arrest exists where, at that moment, the facts and circumstances within the knowledge of the arresting officer and of which he has reasonably trustworthy information would warrant a reasonable and prudent man in believing that a particular person has committed or is committing a crime.  
Jones v. State
, 493 S.W.2d 933, 935 (Tex. Crim. App. 1973).