IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00197-CR

 

Lonnie Dale Mason,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 66th District Court

Hill County, Texas

Trial Court No. 33,423

 



MEMORANDUM  Opinion



 








            Following a bench trial, the court convicted
Lonnie Dale Mason of criminal solicitation of a minor and sentenced him to four
years’ imprisonment.  Mason contends in his sole issue that the court erred by
denying his motion to suppress in which he challenged the voluntariness of a
recorded statement he made to two sheriff’s deputies.  We will affirm.

            We review a suppression ruling under
an abuse-of-discretion standard.   Montanez v. State, 195 S.W.3d 101,
108 (Tex. Crim. App. 2006).  We afford almost total deference to the court’s determination
of historical facts but review de novo the court’s ruling on mixed
questions of law and fact which do not turn on the credibility and demeanor of
witnesses.  Montanez, 195 S.W.3d at 106.  The voluntariness of a
statement given to law enforcement is determined from the totality of the
circumstances.  Wyatt v. State, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000);
Kearney v. State, 181 S.W.3d 438, 444 (Tex. App.—Waco 2005, pet. ref’d).

            Here, Deputy Kent Head was
investigating an allegation that Mason had solicited the complainant to engage
in sexual acts.  Mason went to the sheriff’s department to report that the
complainant’s family had been making harassing phone calls to him.[1]
 Deputy Head first took Mason’s complaint then confronted him with the
allegation against him.  The deputy read Mason his Miranda rights, and Mason
signed a waiver of those rights.  After some discussion, Mason agreed to
provide a statement.  The deputy suggested that Mason provide a videotaped
statement so that he would not have to write out his statement.  At the
beginning of the recording, Mason was again read his rights and signed a waiver
of them.  During the course of the statement, Mason made inculpatory statements
which would later be used at his trial.  After finishing his statement, Mason
was allowed to leave.  He was at the sheriff’s department for at least two and
one-half hours.  He was not arrested until nearly six months later.

            Mason contends that the videotaped
statement should have been suppressed because it was not made voluntarily.  His
complaint has two primary components: (1) the circumstances of the encounter at
the sheriff’s department rendered the encounter the “functional equivalent of
custodial interrogation”; and (2) his mental health status rendered the statement
involuntary.

            A suspect’s statement may be found
involuntary for: (1) failure to comply with the requirements of article 38.22
of the Code of Criminal Procedure; (2) failure to comply with Miranda;
or (3) “violation of due process or due course of law because it was not freely
given (e.g., coercion, improper influences, incompetency).”  Wolfe v.
State, 917 S.W.2d 270, 282 (Tex. Crim. App. 1996); accord Miller v.
State, 196 S.W.3d 256, 266 (Tex. App.—Fort Worth 2006, pet. ref’d); Dawson
v. State, 75 S.W.3d 533, 535 (Tex. App.—Texarkana 2002, no pet.).

            Article 38.22 and Miranda apply
to statements made by a person in custody in response to interrogation or the
functional equivalent of interrogation.  See Tex. Code Crim. Proc. Ann. art. 38.22, § 2 (Vernon 2005); Rhode Island v. Innis, 446 U.S. 291, 300-01, 100 S. Ct. 1682, 1689-90, 64 L. Ed.
2d 297 (1980); Moran v. State, 213 S.W.3d 917, 922-23 (Tex. Crim. App. 2007). 
Conversely, “due process involuntariness claims do not necessarily require that
the interrogation be custodial.  But in the absence of custody, due process is
violated only by confessions that are not in fact freely given rather than by
mere noncompliance with prophylactic rules.”  Wolfe, 917 S.W.2d at 282
(citation omitted).

            Mason’s contention that his interview
was “the functional equivalent of custodial interrogation” conflates two
related issues.  Article 38.22 and Miranda apply only to custodial
settings.  They apply when a law enforcement officer is engaged in the actual
interrogation of a person in custody or uses words or conduct which constitute
“the functional equivalent of interrogation.”  See Innis, 446 U.S. at 300-301, 100 S. Ct. at 1689-90; Moran, 213 S.W.3d at 922-23.  An officer engages in
“the functional equivalent of interrogation” when he uses words or conduct
which he should know are reasonably likely to elicit an incriminating
response.  See Innis, 446 U.S. at 301, 100 S. Ct. at 1689-90; Moran,
213 S.W.3d at 922-23.  There is no comparable legal status known as “the
functional equivalent of custody.”

            Here, the State does not argue that
Deputy Head was not interrogating Mason.  Rather, the State argues that Mason
was not in custody.  The Court of Criminal Appeals has identified at least four
scenarios in which a person may be considered to be in custody for purposes of
the Fifth Amendment:

(1) when the suspect is physically deprived of his
freedom of action in any significant way, (2) when a law enforcement officer
tells the suspect that he cannot leave, (3) when law enforcement officers
create a situation that would lead a reasonable person to believe that his
freedom of movement has been significantly restricted, and (4) when there is
probable cause to arrest and law enforcement officers do not tell the suspect
that he is free to leave.

 

Dowthitt v. State, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996)
(citing Shiflet v. State, 732 S.W.2d 622, 629 (Tex. Crim. App. 1985)); accord
Miller, 196 S.W.3d at 264-65; Rodriguez v. State, 191 S.W.3d 428,
441 (Tex. App.—Corpus Christi 2006, pet. ref’d).

            Regarding the first three scenarios, “the
restriction upon freedom of movement must amount to the degree associated with
an arrest as opposed to an investigative detention.”  Dowthitt, 931
S.W.2d at 255 (citing Stansbury v. California, 511 U.S. 318, 322, 114 S. Ct. 1526, 1528-29, 128 L. Ed. 2d 293 (1994)); accord Miller, 196 S.W.3d
at 265; Rodriguez, 191 S.W.3d at 441.

            Mason argues that four circumstances
of the encounter collectively demonstrate that a reasonable person would have
believed that his freedom of movement was significantly restricted (the third Dowthitt
scenario): (1) the length of the encounter; (2) the fact that the video
interrogation room was in the middle of the jail and not generally accessible
to the public; (3) that he was a suspect before the interrogation began; and
(4) that a deputy testified that he probably would not have allowed Mason to
call a psychiatrist during the interrogation if Mason had asked to.

            The trial court found that the
statement was “non-custodial.”  The only disputed factual issue concerning
Mason’s interrogation is whether he told the officers that he wanted to speak
to his psychologist before waiving his rights and making a recorded statement. 
This dispute comes from the following portion of Mason’s interview, which
occurred right after he was read his Miranda warnings:

Mason:                       I have a question for
ya’ll.

 

Deputy Aiken:          Yes, sir.

 

Mason:                       Is there some kind
of—is there—um—the psychologist that I went and saw the other day, I’d like to
be able to see him again.

 

Deputy Aiken:          Well, I don’t have any
control over that.

 

DeputyHead:            You probably need to.

 

            The trial court did not make an
express finding concerning whether in this instance Mason was asking to contact
his psychologist before proceeding with the interview.  Nevertheless, because
the court found that Mason voluntarily waived his rights, we will imply a
finding that Mason’s comment regarding his psychologist was not such a
request.  See Moran, 213 S.W.3d at 922 (“findings that support the trial
court’s ruling will be implied”).  Deputy Aiken’s testimony that he probably
would not have allowed Mason to call his psychologist reflects on the deputy’s
subjective intent, which has no bearing on the issue of whether Mason was in
custody because the deputy did not convey this information to Mason.  See
Stansbury, 511 U.S. at 323-24, 114 S. Ct. at 1529-30; Dowthitt, 931
S.W.2d at 254; Miller, 196 S.W.3d at 264; Rodriguez, 191 S.W.3d at
440-41.

            The evidence concerning the other
three circumstances cited by Mason is uncontroverted.  The length of detention
did not convert his encounter with the deputies to a custodial setting.  See
Meek v. State, 790 S.W.2d 618, 620-22 (Tex. Crim. App. 1990); Mason v.
State, 116 S.W.3d 248, 265 (Tex. App.—Houston [14th Dist.] 2003, pet.
ref’d); Garza v. State, 34 S.W.3d 591, 596-98 (Tex. App.—San Antonio 2000,
pet. ref’d).  The location of the interrogation room did not either.  See
Garza, 34 S.W.3d at 596-98 (suspect “interviewed in a small room with the
door closed for over five hours”).  Nor did the fact that Mason was the focus
of the investigation make the encounter custodial.  See Meek, 790 S.W.2d
at 621; Miller, 196 S.W.3d at 264; Garza, 34 S.W.3d at 597-98.

            Looking at the totality of the
circumstances, Mason came to the sheriff’s department of his own accord.  The
deputies advised Mason more than once of his Miranda rights.  Mason
indicated that he understood those rights and expressly waived them.  At the
conclusion of the interview, Mason was permitted to leave, and he was not
arrested until several months later.  Under these circumstances, we cannot say
that the court abused its discretion by finding that Mason was not in custody
during this encounter.  See Garza, 34 S.W.3d at 597-98.

            Mason also contends that, even if he
was not in custody, his statement was involuntary under the Due Process Clause
because it was not freely given as a result of coercion, improper influences,
or incompetency.  See Wolfe, 917 S.W.2d at 282; Miller, 196
S.W.3d at 266; Dawson, 75 S.W.3d at 535.  However, “coercive police
activity is a necessary predicate to the finding that a confession is not ‘voluntary’
within the meaning of the Due Process Clause of the Fourteenth Amendment.”  Colorado v. Connelly, 479 U.S. 157, 167, 107 S. Ct. 515, 522, 93 L. Ed. 2d
473 (1986).  Thus, evidence of intoxication is irrelevant to the voluntariness
inquiry absent evidence of “police coercion or other official over-reaching.”  Perry
v. State, 158 S.W.3d 438, 446 (Tex. Crim. App. 2004).  In the same way, evidence
of Mason’s mental health status is irrelevant without evidence of coercion or
over-reaching on the part of the deputies.

            Here, even assuming Mason presented
evidence that he was experiencing adverse mental health symptoms when he gave
the statement to the deputies, the record contains no evidence of coercion or
over-reaching.  See id.  Thus, his statement was not involuntary under
the Due Process Clause.  Accordingly, we overrule Mason’s sole issue and affirm
the judgment.




 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed

Opinion delivered and
filed August 8, 2007

Do not publish

[CR25]









[1]
              Mason had been arrested
several months earlier for criminal trespass on the property of the
complainant’s family.  Deputy Head was investigating the solicitation complaint
then as well.  At that time, Mason denied soliciting the complainant.







Tex.
R. App. P. 44.2(b); Burnett v. State, 88 S.W.3d 633, 637 (Tex. Crim. App. 2002); Valenti, 49
S.W.3d at 598; Fowler v. State, 958 S.W.2d 853, 865 (Tex. App.—Waco 1997), aff’d, 991
S.W.2d 258 (Tex. Crim. App. 1999).
      The essential purpose of the indictment is to provide an accused notice of the allegations
against him. See Curry, 30 S.W.3d at 398. In this case, the original indictment put Dawson on
notice that the State would attempt to prove that he shot Davis with a .25 caliber pistol. The State
notified Dawson by pretrial motion that it intended to amend this allegation. The court granted
the State’s motion nineteen days before trial at the conclusion of a hearing in which Dawson’s
counsel participated. When Dawson’s counsel objected to the attempted amendment to the
indictment on the first day of trial, counsel conceded in a hearing outside the presence of the jury
that he was prepared to proceed on the amended indictment and had been preparing to proceed in
that manner since the date the trial court granted the motion to amend.
      In addition, we will conclude below that the evidence is factually sufficient to support the non-abandoned allegations of the original indictment.
      For the foregoing reasons, we conclude that Dawson’s substantial rights were not affected by
the amendment of the indictment. See Tex. R. App. P. 44.2(b); Valenti, 49 S.W.3d at 598-99;
Westfall, 10 S.W.3d at 91. Thus, we conclude that his second issue is without merit.
FACTUAL SUFFICIENCY
      Dawson claims in his first issue that the evidence is factually insufficient to establish that he
shot Davis “in the groin” with a “.25 caliber pistol” as originally alleged in the indictment.
      When the trial court has allowed an improper amendment and the defendant challenges the
sufficiency of the evidence to support the conviction, we measure the sufficiency of the evidence
against the indictment as it existed before the amendment. Curry, 30 S.W.3d at 404; Garza v.
State, 50 S.W.3d 559, 565 (Tex. App.—Houston [1st Dist.] 2001, no pet.); Westfall, 10 S.W.3d
at 91.
      We have already determined that the deletion of the phrase “in the groin” from the indictment
was an abandonment of surplusage rather than an amendment. Accordingly, we will not review
the sufficiency of the evidence to support this properly abandoned allegation.
      In reviewing a challenge to the factual sufficiency of the evidence, we begin with the
assumption that the evidence is legally sufficient. Santellan v. State, 939 S.W.2d 155, 164 (Tex.
Crim. App. 1997). We must view all the evidence without the prism of the “in the light most
favorable to the prosecution” construct. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996). We ask “whether a neutral review of all the evidence, both for and against the finding,
demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury’s
determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary proof.” Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see also Goodman
v. State, 66 S.W.3d 283, 285 (Tex. Crim. App. 2001).
      We must also remain cognizant of the factfinder’s role and unique position—one that the
reviewing court is unable to occupy. Johnson, 23 S.W.3d at 9. The jury determines the
credibility of the witnesses and may “believe all, some, or none of the testimony.” Chambers v.
State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). It is the jury that accepts or rejects
reasonably equal competing theories of a case. Goodman, 66 S.W.3d at 287. A decision is not
manifestly unjust as to the accused merely because the factfinder resolved conflicting views of
evidence in favor of the State. Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997).
      Davis testified that Dawson shot him with a “.25 caliber pistol.” Dawson’s counsel cross-examined Davis about his knowledge of firearms. Davis responded that he knew it was a .25
caliber weapon because he had seen it once before.
      Dawson avers that the State should have produced expert testimony to establish what caliber
the pistol was. Thus, he argues that Davis’s testimony, “standing alone, is factually too weak to
support [the contested allegation].” Goodman, 66 S.W.3d at 285 (quoting Robert W. Calvert,
“No Evidence” and “Insufficient Evidence” Points of Error, 38 Tex. L. Rev. 361, 366 (1960)). 
However, a lay witness may provide his opinion regarding any fact of consequence if “the witness
has personal knowledge of the events on which his opinion is based and that this opinion is
‘rationally based on that knowledge.’” Webster v. State, 26 S.W.3d 717, 724 (Tex. App.—Waco
2000, pet. ref’d) (quoting Fairow v. State, 943 S.W.2d 895, 898 (Tex. Crim. App. 1997)). 
Applying this standard, we conclude that Davis was qualified to provide lay opinion testimony
regarding the caliber of Dawson’s weapon based on his prior familiarity with the weapon. Thus,
we hold that the State’s evidence regarding the caliber of Dawson’s weapon is not “so obviously
weak as to undermine confidence in the [verdict].” See Johnson, 23 S.W.3d at 11. Accordingly,
Dawson’s first issue is without merit.
INEFFECTIVE ASSISTANCE
      Dawson contends in his third issue that he received ineffective assistance of counsel at trial
because his attorney failed to object when the prosecutor questioned a detective about Dawson’s
failure to discuss his involvement in the shooting with the police, because his attorney inquired
further into this subject on cross-examination, and because his attorney failed to object to the
State’s closing argument on this issue.
      Dawson’s counsel was critical of the investigation on several fronts throughout his cross-examination of Detective Wetterman. He asked Wetterman whether he tried to discuss the
incident with Dawson before obtaining the arrest warrant. Wetterman responded that he was never
able to do so.
      The prosecutor asked whether Dawson had ever contacted the police about the incident. 
Wetterman responded that Dawson never did and added that Dawson “wasn’t talking” when
arrested. Dawson’s counsel did not object to this line of questioning.
      Dawson’s counsel confirmed through Wetterman that Dawson was merely exercising his
constitutional right to remain silent after arrest.
      At argument, the prosecutor characterized the discussion regarding Dawson’s silence as
follows:
Now on his cross-examination of James Wetterman, Mr. Karels said well, did you
seek Anthony Dawson and ask him what his side of the story was? Then when Mr.
Wetterman said they arrested him, oh, but he was invoking his right to silence. In other
words, they are trying to have it both ways.

Dawson’s counsel did not object to this argument.
      It cannot be gainsaid that the State violates the due process rights of a defendant when it offers
his post-arrest silence against him at trial. Doyle v. Ohio, 426 U.S. 610, 618, 96 S. Ct. 2240,
2245, 49 L. Ed. 2d 91, 98 (1976); Griffith v. State, 55 S.W.3d 598, 604-05 (Tex. Crim. App.
2001). However, such a violation must be preserved for appellate review by objection. Saldano
v. State, 70 S.W.3d 873, 889 & n.74 (Tex. Crim. App. 2002).
      To prevail on an ineffective assistance claim, an appellant must overcome the strong
presumption that counsel rendered reasonably professional assistance. Thompson v. State, 9
S.W.3d 808, 813-14 (Tex. Crim. App. 1999). Ordinarily, this presumption cannot be overcome
without evidence in the record of counsel’s reasons for the acts or omissions of which the appellant
complains. See Johnson v. State, 68 S.W.3d 644, 655 (Tex. Crim. App. 2002); Thompson, 9
S.W.3d at 813-14; Murray v. State, 24 S.W.3d 881, 891 (Tex. App.—Waco 2000, pet. ref’d). 
However, a single act or omission on counsel’s part can be so egregious as to constitute ineffective
assistance. Thompson, 9 S.W.3d at 813; Scott v. State, 57 S.W.3d 476, 483 (Tex. App.—Waco
2001, pet. ref’d).
      The record in this case is silent as to the reasons counsel acted or failed to act with regard to
the instances of which Dawson now complains. However, the record supports the notion that
Dawson’s counsel pursued this line of inquiry to attack the thoroughness of Detective Wetterman’s
investigation. Accordingly, we conclude that Dawson has failed to overcome the presumption that
counsel had sound reasons for acting or failing to act in each instance. Thus, we conclude that his
third issue is without merit.
DEADLY WEAPON FINDING
      Dawson argues in his fourth issue that the trial court should not have entered a deadly weapon
finding in the judgment because the jury did not find him guilty “as charged.”
      An affirmative deadly weapon finding is proper after a jury trial when: (1) the indictment
alleges a deadly weapon was used and the jury finds the defendant guilty as charged in the
indictment; (2) the indictment alleges a deadly weapon by design, and the jury finds the defendant
guilty as charged in the indictment; or (3) a special issue is submitted to the jury and answered
affirmatively. Davis v. State, 897 S.W.2d 791, 793 (Tex. Crim. App. 1995); Polk v. State, 693
S.W.2d 391, 396 (Tex. Crim. App. 1985); Stewart v. State, 70 S.W.3d 309, 314-15 (Tex.
App.—Waco 2002, pet. ref’d).
      Until recently, the jury’s verdict had to expressly find the defendant guilty “as charged” or
otherwise refer back to the allegations of the indictment to support an “express” deadly weapon
finding under the first and second alternatives noted above. E.g., Davis, 897 S.W.2d at 793-94;
Stewart, 70 S.W.3d at 316. However, the Court of Criminal Appeals has recently rejected this
approach. Now, the jury will be deemed to have made an express deadly weapon finding under
these alternatives if “the jury’s verdict . . . is based upon an application paragraph that explicitly
and expressly requires the jury to find that the defendant used a deadly weapon in the commission
of the offense.” Lafleur v. State, 106 S.W.3d 91, 98 (Tex. Crim. App. 2003).
      A pistol is a deadly weapon by design. See id. at 95. The application paragraph of the charge
required the jury to find that Dawson used a deadly weapon to assault Davis. The jury convicted
Dawson of the only offense submitted to it in the charge. Accordingly, the trial court properly
entered a deadly weapon finding in the judgment. Id. Thus, Dawson’s fourth issue is without
merit.
JUVENILE RECORD
      Dawson claims in his fifth issue that the court abused its discretion by admitting evidence
during the punishment phase that he had received deferred prosecution for four offenses as a
juvenile.
      A juvenile probation officer testified over objection that Dawson received deferred
prosecution for the offenses of resisting arrest, evading arrest, and manufacture and/or delivery
of cocaine. He was never adjudicated on any of these offenses.
      Article 37.07, section 3(a)(1) provides:
Regardless of the plea and whether the punishment be assessed by the judge or the
jury, evidence may be offered by the state and the defendant as to any matter the court
deems relevant to sentencing, including but not limited to the prior criminal record of the
defendant, his general reputation, his character, an opinion regarding his character, the
circumstances of the offense for which he is being tried, and, notwithstanding Rules 404
and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act
that is shown beyond a reasonable doubt by evidence to have been committed by the
defendant or for which he could be held criminally responsible, regardless of whether he
has previously been charged with or finally convicted of the crime or act. A court may
consider as a factor in mitigating punishment the conduct of a defendant while
participating in a program under Chapter 17 as a condition of release on bail. 
Additionally, notwithstanding Rule 609(d), Texas Rules of Evidence, and subject to
Subsection (h), evidence may be offered by the state and the defendant of an adjudication
of delinquency based on a violation by the defendant of a penal law of the grade of:

            (A) a felony; or

            (B) a misdemeanor punishable by confinement in jail.

Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2003).
      The language of the statute may lead one to conclude that only juvenile adjudications
involving a felony or jailable misdemeanor are admissible at punishment. Nevertheless, Texas
courts have consistently held that unadjudicated crimes or bad acts committed by the defendant as
a juvenile are admissible during the punishment phase of an adult criminal trial. See Strasser v.
State, 81 S.W.3d 468, 469-70 (Tex. App.—Eastland 2002, no pet.); Rodriguez v. State, 975
S.W.2d 667, 687 (Tex. App.—Texarkana 1998, pet. ref’d); see also Pitts v. State, 560 S.W.2d
691, 692 (Tex. Crim. App. [Panel Op.] 1978); Lindsay v. State, 102 S.W.3d 223, 227 (Tex.
App.—Houston [14th Dist.] 2003, pet. filed). Other commentators agree with this interpretation
of the statute. E.g., Robert O. Dawson, Texas Juvenile Law, 250-51 (5th ed., Tex. Juv. Probation
Commn. 2000).
      Accordingly, we conclude that Dawson’s fifth issue is without merit.
      We affirm the judgment.
 
                                                                   BILL VANCE
                                                                   Justice
Before Chief Justice Gray and
      Justice Vance
      (former Chief Justice Davis not participating)



Affirmed
Opinion delivered and filed December 31, 2003
Do not publish
[CR25]