COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-457-CR

 

 

BYRON LYNN GAMBLE                                                         APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I. Introduction








Appellant Byron Lynn Gamble
appeals his conviction and fifty-one-year sentence for aggravated robbery with
a deadly weapon.  Appellant contends in
his first point that the trial court erred by admitting two unrecorded oral
statements he made to police officers while in custody but before he had been
Mirandized.  In his second point,
appellant contends that the evidence was factually insufficient to establish
that he used or exhibited a firearm while committing the robbery.  We affirm.

II.  Background Facts

On July 14, 2004, as James
Burnett showered in his apartment, two men knocked at the door.  When Laura Wood, a friend Burnett had
recently met on the Internet, asked who the men were, one man responded AJune Bug.@  Burnett instructed Wood to crack the door and
identify the men.  As Wood cracked the
door, the masked men, armed with a pistol and tire tool, forced their way into
the apartment and began searching the premises.

Burnett heard Wood scream and
quickly emerged from the bathroom, still naked and wet.  The robbers ordered Burnett and Wood into the
bathroom.  When Burnett cracked the door
to see what was going on, one of the robbers hit Burnett with the tire tool,
driving him back into the bathroom. 
Eventually, the robbers went into the bathroom, held a gun to Burnett=s head, led him into the bedroom, and ordered Burnett to open a
safe.  After Burnett opened the safe, the
robbers stuffed everything in the safe, including Burnett=s coin collection, into a pillowcase and pushed him face-down into a
recliner next to the bed.  The robbers
beat Burnett with a gun and the tire tool. 
While the robbers were beating Burnett he retrieved a handgun that he
had previously placed in the recliner cushions and hid it in his stomach area. 








Burnett then ran into the
bedroom closet and slammed the door. 
Burnett immediately spun around, opened the closet door, and fired a
shot.  The robbers ran as Burnett, still
naked, chased them out of his apartment and down the building=s stairs while firing his gun. 
Burnett fatally wounded one robber, whom police later identified as Gerald
Marshall.  Marshall=s accomplice escaped.

On July 19, 2004, a man
interested in selling coins contacted Bill Walker, an employee of Heritage Rare
Coin Galleries in Dallas.  Shortly
thereafter, two men arrived at the gallery and tried to sell a coin collection
matching the one recently stolen from Burnett. 
Walker, who remembered reading on the Internet that similar coins had
recently been stolen, immediately contacted the Dallas Police Department.  At trial, Walker identified appellant as one
of the men.








Eventually, two Dallas police
officers arrived at Heritage Rare Coin Gallery. 
The officers patted down the two men, but did not arrest or handcuff
them.  When Officer Michael Dana
questioned appellant about the coins, appellant stated that he got the coins
from Marshall, who had died of gunshot wounds. 
At some point during or after this conversation, Officer Dana asked
appellant to sit on the floor and wait while he used Walker=s computer to look up the Internet article regarding the Burnett
robbery.  After learning of the robbery
and determining that the Grand Prairie Police Department had jurisdiction,
Officer Dana contacted them and ultimately turned appellant over to them when
they arrived.

The Grand Prairie police took
appellant to the Tarrant County Jail on July 23, 2004.  While he was booking appellant, Lieutenant
Eddie Herriage noticed that appellant=s right thigh and foot were injured. 
When Lieutenant Herriage questioned appellant about the injuries,
appellant said he had been shot on July 14, 2004, but had not sought medical
attention for fear of arrest.

 III. 
Admissibility of Unrecorded Oral Statements

In his first point, appellant
contends that the trial court erred by admitting two unrecorded oral statements
he made to police officers while he was in custody but before he had been
Mirandized.  Specifically, appellant
argues that the trial court should not have admitted his statement to Officer
Dana that Marshall gave him the coins or his statement to Lieutenant Herriage
that he did not seek medical attention for his injury for fear of arrest. 

A.  Standard of Review








The standard of review for a
trial court=s admission
of evidence is abuse of discretion, and wide discretion is afforded to the
trial judge.  Theus v. State, 845
S.W.2d 874, 881 (Tex. Crim. App. 1992); Miller v. State, 196 S.W.3d 256,
267 (Tex. App.CFort Worth
2006, pet. filed).[1]  The trial court=s decision should be reversed on appeal only if there is a showing of
a clear abuse of discretion.  Theus,
845 S.W.2d at 881; Miller, 196 S.W.3d at 267.  Only if the court=s decision falls outside the Azone of reasonable disagreement@ has it abused its discretion.  Rankin
v. State, 974 S.W.2d 707, 718 (Tex. Crim. App. 1998) (op. on reh=g); Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.
1991) (op. on reh=g).   

B.  Applicable Law








The prosecution may not use
statements, whether exculpatory or inculpatory, stemming from the custodial
interrogation of the defendant unless it demonstrates the use of procedural
safeguards effective to secure the Fifth Amendment privilege against
self-incrimination.  Miranda v.
Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966); Miller, 196
S.W.3d at 264.  Additionally, article
38.22 of the code of criminal procedure provides that no statement made as a
result of a custodial interrogation shall be admissible against the accused in
a criminal proceeding unless, among other things, prior to the giving of the
statement, specific statutory warnings are administered to the accused.  See Tex.
Code Crim. Proc. Ann. art. 38.22 (Vernon 2005).

Custodial interrogation is
questioning initiated by law enforcement officers after a person has been taken
into custody or otherwise deprived of his freedom of action in any significant
way.  Miranda, 384 U.S. at 444, 86
S. Ct. at 1612; Miller, 196 S.W.3d at 267.  If an investigation is not at the
accusatorial or custodial stage, a person=s Fifth Amendment rights have not yet come into play and the
voluntariness of those rights is not implicated.  Melton v. State, 790 S.W.2d 322, 326
(Tex. Crim. App. 1990).  

Four factors relevant to
determining whether a person is in custody are the (1) probable cause for
arrest, (2) subjective intent of the police, (3) focus of the investigation,
and (4) subjective belief of the defendant. 
Dowthitt v. State, 931 S.W.2d 244, 254 (Tex. Crim. App.
1996).  Under Stansbury v. California,
factors two and four have become irrelevant except to the extent that they may
be manifested in the words or actions of police officers; the custody
determination is therefore based entirely upon objective circumstances.  511 U.S. 318, 322-23, 114 S. Ct. 1526,
1528-29 (1994); Dowthitt, 931 S.W.2d at 254.  








Four general situations in
which a suspect=s detention
may constitute custody are (1) when the suspect is physically deprived of his
freedom of action in any significant way, (2) when a law enforcement officer
tells the suspect that he cannot leave, (3) when law enforcement officers
create a situation that would lead a reasonable person to believe that his
freedom of movement has been significantly restricted, and (4) when there is
probable cause to arrest[2]
and law enforcement officers do not tell the suspect that he is free to
leave.  Dowthitt, 931 S.W.2d at
255; Miller, 196 S.W.3d at 264-65. 
In the first through third situations, the restriction upon freedom of
movement must amount to the degree associated with an arrest as opposed to an
investigative detention.  See Dowthitt,
931 S.W.2d at 255. (citing Stansbury, 511 U.S. at 322-23, 114 S.
Ct. at 1528-29).  Concerning the fourth
situation, the officer=s knowledge
of probable cause must be manifested to the subject, and such manifestation
could occur if information sustaining the probable cause is related by the
officer to the suspect or by the suspect to the officers.  Id.; see Ruth v. State, 645
S.W.2d 432, 436 (Tex. Crim. App. [Panel Op.] 979). 








Here, Officer Dana testified
that upon arriving at the store, he asked appellant who he was and told him
that the coins he was attempting to sell might be stolen.  Before Officer Dana asked appellant any other
questions, appellant stated that he had gotten the coins from a friend who had
who just died.  Officer Dana then asked
appellant who his friend was and what he had died of.  Appellant responded that the friend was
Marshall and that Ahe had been
shot.@  At some point during or
immediately after this brief exchange, Officer Dana asked appellant and his
friend to sit on the floor while he found out where the offense occurred and if
appellant=s coins were
linked to the offense Walker had called him about.  He did not handcuff appellant at this point.








In his brief, appellant
asserts that any reasonable person would have felt Athe level of restraint associated with formal arrest@ when Officer Dana took him aside, made him sit on the floor, and
guarded him until the Grand Prairie police arrived.  However, the evidence at trial shows that
Officer Dana asked only these questions before asking appellant to sit on the
floor.  Further, Officer Dana testified
that appellant was not under arrest, but that he only initially questioned
appellant because he had very limited information and wanted to inform
appellant as to why the police were there. 
Officer Dana=s inquiry
regarding appellant=s identity
and who gave him the coins constituted general questioning in the fact-finding
process.  See Wallace v. State,
813 S.W.2d 748, 751 (Tex. App.CHouston [1st Dist.] 1991, no pet.) (holding that an officer=s initial questioning of a potential check forger served only to help
the officer understand the facts of the situation).  Probable cause to arrest did not arise until
Officer Dana asked these questions and observed the Internet article.  See Parker v. State, 710 S.W.2d 146,
147 (Tex. App.CHouston
[14th Dist.] 1986, no pet.) (holding that a defendant was not in custody when
an officer did not arrest him, but also did not allow him to leave until
determining whether he had stolen two checks). 

Under these circumstances,
even though appellant was not free to leave until Officer Dana completed his
investigation, appellant was not in custody. 
See Wallace, 813 S.W.2d at 751; Parker, 710 S.W.2d at
147.  The law permits an officer a
reasonable time to delay potential witnesses or suspects to determine the facts
of a given situation, and in this case, to find out whether there was some
reasonable explanation for appellant=s possession of the coins.  See
Parker, 710 S.W.2d at 147.  If
such a reasonable explanation had been forthcoming, appellant would have been
spared the indignity of an arrest.  See
Wallace, 813 S.W.2d at 751. 
Appellant=s theory of
law would require an officer to pre-emptively arrest before giving a citizen an
opportunity to explain himself.   








Therefore, because appellant
was not in custody, the statements he made to Officer Dana were
admissible.  See Parker, 710
S.W.2d at 147.  Consequently, the
trial court did not clearly abuse its discretion by overruling appellant=s objection regarding this testimony.

Appellant also asserts that
the trial court erred by admitting appellant=s statement to Lieutenant Herriage during the police booking process
explaining that he did not seek medical attention for his injury for fear of
arrest.  However, appellant did not
object to the admission of this testimony at trial.  To preserve an issue for appellate review, a defendant
must timely and specifically object.  Tex. R. App. P. 33.1(a); Gutierrez
v. State, 36 S.W.3d 509, 510-11 (Tex. Crim. App. 2001); Duran v. State,
163 S.W.3d 253, 256 (Tex. App.CFort Worth 2005, no pet.).  By not
objecting, appellant did not preserve this issue.  

Accordingly, we overrule
appellant=s first
point.   

IV.  Factual Sufficiency

In his second point,
appellant alleges that the evidence is factually insufficient to support the
finding that he used or exhibited a firearm while committing the offense.  

     A. 
Standard of Review








When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, No. PD-469-05, 2006 WL 2956272, at *8 (Tex.
Crim. App. Oct. 18, 2006); Drichas v. State, 175 S.W.3d 795, 799 (Tex.
Crim. App. 2005).  We then ask whether
the evidence supporting the conviction, although legally sufficient, is
nevertheless so weak that the fact-finder=s determination is clearly wrong and manifestly unjust or whether
conflicting evidence so greatly outweighs the evidence supporting the
conviction that the fact-finder=s determination is manifestly unjust. 
Watson, 2006 WL 2956272, at *8, 10; Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000).  To
reverse under the second ground, we must determine, with some objective basis
in the record, that the great weight and preponderance of all the evidence,
though legally sufficient, contradicts the verdict.  Watson, 2006 WL 2956272, at *10.








In determining whether the
evidence is factually insufficient to support a conviction that is nevertheless
supported by legally sufficient evidence, it is not enough that this court Aharbor a subjective level of reasonable doubt to overturn [the]
conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s resolution of a conflict in the evidence.  Id. 
We may not simply substitute our judgment for the fact-finder=s.  Johnson, 23 S.W.3d at
12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s determination of the weight to be given contradictory testimonial
evidence because resolution of the conflict Aoften turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered.@ Johnson, 23 S.W.3d at 8. 
Thus, we must give due deference to the fact-finder=s determinations, Aparticularly those determinations concerning the weight and
credibility of the evidence.@  Id. at 9.

An opinion addressing factual
sufficiency must include a discussion of the most important and relevant
evidence that supports the appellant=s complaint on appeal.  Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  Moreover, an opinion reversing and remanding
on factual insufficiency grounds must detail all the evidence and clearly state
why the finding in question is factually insufficient and under which
ground.  Goodman v. State, 66
S.W.3d 283, 287 (Tex. Crim. App. 2001); Johnson, 23 S.W.3d at 7. 

B.  Applicable Law and Analysis








A person is criminally
responsible as a party to an offense if the offense is committed by his own
conduct, by the conduct of another for whom he is criminally responsible, or by
both.  Tex.
Penal Code Ann. ' 7.01(a)
(Vernon 2003).  Further, a person is
criminally responsible for an offense committed by the conduct of another if,
acting with intent to promote or assist in committing the offense, he solicits,
encourages, directs, aids, or attempts to aid the other person in committing
the offense.  Id. ' 7.01(a)(2).  Whether the
accused participated as a party to an offense may be determined by examining
the events occurring before, during, and after the commission of the offense
and by examining the actions of the accused that show an understanding and
common design to commit the offense. 
King v. State, 29 S.W.3d 556, 564 (Tex. Crim. App. 2000).  

A person commits aggravated
robbery if he commits robbery and uses or exhibits a deadly weapon.  Tex.
Penal Code Ann. ' 29.03(a)(2)
(Vernon 2003).  A deadly weapon is a
firearm or anything that in the manner of its use or intended use is capable of
causing serious bodily injury or death. Id. ' 1.07(a)(17) (Vernon Supp. 2006). 
An affirmative finding may be entered against a defendant who never used
or brandished a deadly weapon during the commission of an offense, so long as
he (1) was a party to an offense where a deadly weapon was used or exhibited
and (2) knew such a weapon would be used or exhibited.  Tex.
Code Crim. Proc. Ann. art. 42.12, ' 3g(a)(2) (Vernon Supp. 2006); see Dowdle v. State, 11 S.W.3d
233, 235 (Tex. Crim. App. 2000).








Appellant cites Williams
v. State to argue that, although the use of a firearm is not necessarily an
essential element of aggravated robbery, the State assented to its Aessentiality@ by averring
in the indictment that the deadly weapon was a firearm.  980 S.W.2d 222, 228 (Tex. App.CHouston [14th Dist.] 1998, pet. ref=d).  Appellant does not dispute
the fact that he was a party to the robbery or that Marshall exhibited or used
a firearm during the robbery.  Appellant
only asserts that the evidence was insufficient to support a finding that he
personally used or exhibited a firearm.       








Even if appellant never
actually touched the handgun during the robbery, the evidence showed that he
was a party to the robbery and knew that Marshall was going to use or exhibit
the handgun in the commission of the robbery. 
See Tex. Code Crim. Proc.
Ann. art. 42.12, ' 3g(a)(2); Dowdle,
11 S.W.3d at 235.  Both Burnett and Wood
testified that one robber used a handgun throughout the commission of the
robbery.  Specifically, after pushing
Burnett=s front door open, one robber held the gun to Wood=s head and said, ABitch, I will shoot you.@  Then, the same robber put the
gun in Burnett=s face and
told him to go into the bathroom.  On
multiple occasions, when Burnett cracked the bathroom door to see what the
robbers were doing, one of the robbers pointed the gun at him and said, AKeep the damn doors closed.@  After the robbers found
Burnett=s safe, one robber held the gun to his head and demanded that he open
it.  Once the robbers gathered the
contents of the safe, one robber hit Burnett=s face and the back of his head with the butt of the handgun.  Burnett testified that after he retrieved his
own gun and chased the robbers out of his apartment, he saw one robber lying
face-down on the ground.  Noticing that
the robber still had a handgun, Burnett kicked it aside and emptied its clip.

The evidence also showed that
Marshall had deliberately armed himself for the purpose of using the weapon if
necessary to accomplish the robbery. 
Appellant certainly discovered that Marshall had armed himself when
Marshall first held the gun to Wood=s head, if not before.  Further,
Marshall continued to use the gun throughout the entire robbery until his
ultimate demise.  Based on these
circumstances, a trier of fact could rationally conclude that appellant knew of
Marshall=s intention to use the weapon during the robbery.  See Dowdle, 11 S.W.3d at 238 (holding
that defendant knew of his co-conspirator=s intention to use a weapon in committing a crime when he fled with
the co-conspirator after the co-conspirator shot a police officer); Johnson
v. State, 6 S.W.3d 709, 713 (Tex. App.CHouston [1st Dist.] 1999, pet. ref=d) (holding that a defendant knew that her accomplice was planning to
use a weapon to commit a robbery because she played key roles in planning and
carrying out robbery).








Giving due deference to the
fact-finder=s
determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence,@ we hold that the evidence was factually sufficient to support the
jury=s finding that appellant (1) was a party to an offense in which a
deadly weapon was used or exhibited and (2) knew such a weapon would be used or
exhibited.  See Tex. Code Crim. Proc. Ann. art. 42.12, ' 3g(a)(2); Johnson, 23 S.W.3d at 9; see also Dowdle, 11
S.W.3d at 235.  Accordingly, we
overrule appellant=s second
point.

Having overruled appellant=s two points, we affirm the trial court=s judgment.

 

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL A:   LIVINGSTON, HOLMAN, and WALKER, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
November 16, 2006











[1]Appellant
filed a motion to suppress the statements he made to Officer Dana.  The trial court denied this motion.  In his brief, however, appellant does not
challenge the trial court=s
denial of his motion to suppress; he asserts only that the trial court erred by
admitting the statements into evidence over his objection at trial.  Therefore, clear abuse of discretion is the
appropriate standard of review.  See
Theus, 845 S.W.2d at 881.





[2]Probable
cause to arrest exists when, at that moment, the facts and circumstances within
the knowledge of the arresting officer or of which he has reasonably
trustworthy information would warrant a reasonable and prudent man in believing
that a particular person has committed or is committing a crime.  Torres v. State, 182 S.W.3d 899, 902
(Tex. Crim. App. 2005); Jones v. State, 493 S.W.2d 933, 935 (Tex. Crim.
App. 1973).