

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00266-CR

STEVE R. KING                                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

FROM COUNTY CRIMINAL COURT NO. 5 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In one issue, appellant Steve R. King contends that the evidence is insufficient to support his conviction for assaulting Ashley Jefferson, with whom he had a dating relationship. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

**Background Facts**

**The evidence supporting appellant's conviction**

According to testimony provided by Fort Worth Police Department Officers Amelia Johnson and Matthew Kaether, one night in January 2011, the officers were patrolling a neighborhood in the same car when Officer Johnson, who was not driving, "clearly observed" appellant strike Jefferson at full force "at least two times." Officer Johnson was about fifty yards away from appellant when she saw the first strike, but she was closer when she saw the second strike. Appellant appeared to be hitting Johnson with a closed fist. Jefferson was trying to protect herself while lying on her back in a driveway, which was close to a streetlight. She was "almost in a fetal position."

The officers stopped driving and arrested appellant; Officer Johnson thought that appellant, who was yelling profanities, had been drinking alcohol. Jefferson was crying and was upset enough that she had trouble speaking. Officer Kaether picked up Jefferson's shoes from the ground and gave them to her.

Officer Johnson saw a significant amount of "fresh blood" inside Jefferson's mouth and believed that Jefferson's lips were swollen. According to Officer Johnson's testimony at trial, appellant was spitting blood, although Officer Johnson did not include that detail in her report when she arrested appellant. Jefferson indicated that she was in pain and said that appellant had punched her

with his hand, but she refused to receive treatment.[2]  She also refused the officers' offer to give her an emergency protective order.  Officer Kaether took photographs of Jefferson, but the photographs do not show blood; Officer Johnson later explained that it "was very hard to photograph [Jefferson], because she was so upset."  Officers Johnson and Kaether left the scene quickly because appellant was "very agitated."

**The evidence weighing against appellant's conviction**

Jefferson, who has been convicted twice for prostitution, testified that on the date of appellant's arrest, she was his girlfriend, and she had been staying at his house for about two months.  According to Jefferson, on the night of appellant's arrest, she and appellant watched a movie, visited a club, and went to a store to get some food, at which time she decided to leave the store to visit with another male friend.  Before leaving with the male friend, she and a woman named Barbara had a physical fight.  Barbara was upset because Jefferson was with appellant, with whom Barbara apparently wanted to have a relationship.[3] Jefferson said that her lip bled as a result of her fight with Barbara.

After visiting with the male friend and going to her mother's house to wash her mouth and brush her teeth, Jefferson returned to the store.  Appellant was

---

[2]Officer Kaether testified that he saw appellant standing over Jefferson but did not witness the assault.  He confirmed that Jefferson was crying and was holding her mouth, which had fresh blood in it, but he said that he did not see her spitting blood.

[3]Appellant testified that he had previously dated Barbara.

still there, but he was upset. Jefferson and appellant argued loudly as they walked toward appellant's house. Because of appellant's jealousy and anger, he took Jefferson's shoes from her and made her walk without them. According to Jefferson, when she reached the house, she tried to put her shoes back on, but she tripped over the shoelaces and fell to the ground. After she fell, appellant pointed at her face with his finger while he stood over her, held her hoodie, and told her to get up. Jefferson admitted that she was screaming and crying when the officers arrived, but she said that she was doing so only because appellant was mad at her. She denied that appellant hit her, refuted telling the police that he did so, and said that she had not spit blood in the officers' presence. Jefferson later signed an affidavit of nonprosecution, stating that she did not want to pursue charges against appellant.

The day after appellant's arrest, he bonded out of jail and went with Jefferson to a parole office so that she could explain what had happened.[4] Valerie Taylor, a parole officer who spoke with appellant and Jefferson, testified that Jefferson did not have any visible injuries, was not scared to be in appellant's presence, and was upset that appellant had been in jail. Jefferson and appellant told Taylor that appellant had not committed assault.

---

[4]Appellant was on parole for a drug conviction. He had previously been convicted of two robberies and several drug-related offenses.

4

Appellant's testimony was mostly consistent with Jefferson's testimony.[5] He confirmed that Jefferson fought with Barbara, visited with another male, argued with appellant while walking toward appellant's house, and fell on the ground near appellant's house while he pointed his finger at her and screamed at her. He also agreed that he had required Jefferson to take off her shoes and that Jefferson had tripped over the shoelaces because they were untied. Appellant denied that he had hit Jefferson but conceded that "it could have looked like [he] was striking" her. Although appellant said that he has never hit a woman, he admitted that one of his felony convictions was for robbery where a woman sustained bodily injury. He said that during that offense, a codefendant snatched the woman's purse.

According to appellant, when Officer Johnson arrested him, she said, "I smelled alcohol. He's definitely a beater." Appellant said that he and Officer Johnson have had "a few run-ins" at the store where he and Jefferson bought food on the night of his arrest.[6]

**Procedural history**

The State charged appellant with assaulting Jefferson by striking her with his hand. The State's charging instrument contained an enhancement paragraph

---

[5]Jefferson testified that appellant had been working on the date of the assault; appellant testified that he had not been working and had spent the entire day with Jefferson.

[6]Officer Johnson testified that she did not remember any particular interactions with appellant preceding the offense at issue.

5

alleging that appellant had been previously convicted of a felony. Appellant pled not guilty, but the jury found him guilty. Because appellant had already been confined for an extended period, the trial court sentenced him to one day in jail. Appellant brought this appeal.

## Evidentiary Sufficiency

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Isassi*, 330 S.W.3d at 638.

Appellant assaulted Jefferson if he intentionally, knowingly, or recklessly caused bodily injury to her. *See* Tex. Penal Code Ann. § 22.01(a)(1) (West 2011); *Smith v. State*, 352 S.W.3d 55, 62 (Tex. App.—Fort Worth 2011, no pet.).[7] "Bodily injury" means "physical pain, illness, or any impairment of physical condition." Tex. Penal Code Ann. § 1.07(a)(8) (West Supp. 2011).

---

[7]Appellant does not challenge the sufficiency of the evidence to prove that he and Jefferson had a dating relationship. *See* Tex. Penal Code Ann. § 22.01(b)(2).

6

Certainly, the evidence conflicted concerning whether appellant caused bodily injury to Jefferson by striking her with his hand. This conflict compelled the jury to believe either Officer Johnson (who said that she "clearly observed" appellant strike Jefferson twice)[8] or Jefferson and appellant (who each said that appellant had not hit Jefferson). By returning a guilty verdict, the jury indicated its choice to believe Officer Johnson. *See Baker v. State*, No. 02-10-00079-CR, 2010 WL 4813117, at *6 (Tex. App.—Fort Worth Nov. 24, 2010, pet. ref'd) (mem. op., not designated for publication). The jury may have based its choice on the fact that appellant and Jefferson each had a reason to deny the assault. Jefferson stated that on the date of the trial, she still had romantic feelings for appellant and that appellant had reciprocated those feelings. Jefferson admitted that she knew that appellant could go to prison for violating his parole by committing assault, and she conceded that she did not want him to go to prison. Appellant testified that he was on parole for a twenty-year drug-related sentence that he had received in 2007. He said that he had already been to prison "numerous times," and he was concerned that if he returned to prison, his elderly mother could "die on [him]." The jury may also have discredited appellant's

---

[8]Officer Johnson appeared to initially testify that she saw both of appellant's punches before telling Officer Kaether to turn the patrol vehicle. Officer Johnson later testified that she saw one punch, turned, and then saw the second punch from a closer distance. Despite this apparent inconsistency about the sequence of the assault, as we explain below, the jury was authorized to accept Officer Johnson's generally consistent testimony that appellant hit Jefferson twice.

7

testimony because it was impeached by his prior convictions. *See* Tex. R. Evid. 609(a); *Miller v. State*, 196 S.W.3d 256, 267–68 (Tex. App.—Fort Worth 2006, pet. ref'd) (mem. op.).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009); *see also Franklin v. State*, 193 S.W.3d 616, 620 (Tex. App.—Fort Worth 2006, no pet.) (explaining that the jury may "accept or reject *any or all of the evidence of either party*") (emphasis added); *Dotson v. State*, 146 S.W.3d 285, 295 (Tex. App.—Fort Worth 2004, pet. ref'd) (stating that a jury is free to "accept or to reject all or part of . . . defensive evidence"). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Isassi*, 330 S.W.3d at 638.

We recognize that the record discloses evidence and inferences that weigh against appellant's conviction. But viewing the evidence in the light most

favorable to the jury's verdict, and resolving the conflicting testimony in favor of the verdict, we hold that a rational jury could have found that the State proved the elements of assault beyond a reasonable doubt. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Isassi*, 330 S.W.3d at 638 (explaining that an appellate court should not have a role of becoming a "thirteenth juror"); *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988) (stating that it "is not the reviewing court's duty to disregard, realign or weigh evidence" and that "[c]oncrete application of the *Jackson* standard is made by resolving inconsistencies in the testimony in favor of the verdict"); *see also Stewart v. State*, No. 11-09-00181-CR, 2011 WL 704411, at *1 (Tex. App.—Eastland Jan. 13, 2011, no pet.) (mem. op., not designated for publication) (rejecting a defendant's evidentiary sufficiency challenge and affirming an assault conviction although the victim denied suffering pain as a result of the defendant's actions). Therefore, we conclude that the evidence is sufficient to sustain appellant's conviction, and we overrule appellant's only issue.

## Conclusion

Having overruled appellant's issue, we affirm the trial court's judgment.

PER CURIAM

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 8, 2012