02-11-266-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00266-CR

 

 


 
 
 Steve R. King
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM County
Criminal Court No. 5 OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

          In
one issue, appellant Steve R. King contends that the evidence is insufficient
to support his conviction for assaulting Ashley Jefferson, with whom he had a
dating relationship.  We affirm.

Background Facts

The
evidence supporting appellant’s conviction

          According
to testimony provided by Fort Worth Police Department Officers Amelia Johnson
and Matthew Kaether, one night in January 2011, the officers were patrolling a
neighborhood in the same car when Officer Johnson, who was not driving, “clearly
observed” appellant strike Jefferson at full force “at least two times.”  Officer
Johnson was about fifty yards away from appellant when she saw the first
strike, but she was closer when she saw the second strike.  Appellant appeared
to be hitting Johnson with a closed fist.  Jefferson was trying to protect
herself while lying on her back in a driveway, which was close to a streetlight.
 She was “almost in a fetal position.”

          The
officers stopped driving and arrested appellant; Officer Johnson thought that
appellant, who was yelling profanities, had been drinking alcohol.  Jefferson
was crying and was upset enough that she had trouble speaking.  Officer Kaether
picked up Jefferson’s shoes from the ground and gave them to her.

          Officer
Johnson saw a significant amount of “fresh blood” inside Jefferson’s mouth and believed
that Jefferson’s lips were swollen.  According to Officer Johnson’s testimony
at trial, appellant was spitting blood, although Officer Johnson did not
include that detail in her report when she arrested appellant. Jefferson indicated
that she was in pain and said that appellant had punched her with his hand, but
she refused to receive treatment.[2]  She also refused the
officers’ offer to give her an emergency protective order.  Officer Kaether
took photographs of Jefferson, but the photographs do not show blood; Officer
Johnson later explained that it “was very hard to photograph [Jefferson],
because she was so upset.”  Officers Johnson and Kaether left the scene quickly
because appellant was “very agitated.”

The
evidence weighing against appellant’s conviction

          Jefferson,
who has been convicted twice for prostitution, testified that on the date of
appellant’s arrest, she was his girlfriend, and she had been staying at his
house for about two months.  According to Jefferson, on the night of
appellant’s arrest, she and appellant watched a movie, visited a club, and went
to a store to get some food, at which time she decided to leave the store to visit
with another male friend.  Before leaving with the male friend, she and a woman
named Barbara had a physical fight.  Barbara was upset because Jefferson was with
appellant, with whom Barbara apparently wanted to have a relationship.[3] 
Jefferson said that her lip bled as a result of her fight with Barbara.

          After
visiting with the male friend and going to her mother’s house to wash her mouth
and brush her teeth, Jefferson returned to the store.  Appellant was still
there, but he was upset.  Jefferson and appellant argued loudly as they walked toward
appellant’s house.  Because of appellant’s jealousy and anger, he took
Jefferson’s shoes from her and made her walk without them.  According to
Jefferson, when she reached the house, she tried to put her shoes back on, but
she tripped over the shoelaces and fell to the ground.  After she fell,
appellant pointed at her face with his finger while he stood over her, held her
hoodie, and told her to get up.  Jefferson admitted that she was screaming and
crying when the officers arrived, but she said that she was doing so only because
appellant was mad at her.  She denied that appellant hit her, refuted telling
the police that he did so, and said that she had not spit blood in the
officers’ presence.  Jefferson later signed an affidavit of nonprosecution,
stating that she did not want to pursue charges against appellant.

          The
day after appellant’s arrest, he bonded out of jail and went with Jefferson to
a parole office so that she could explain what had happened.[4] 
Valerie Taylor, a parole officer who spoke with appellant and Jefferson,
testified that Jefferson did not have any visible injuries, was not scared to
be in appellant’s presence, and was upset that appellant had been in jail.  Jefferson
and appellant told Taylor that appellant had not committed assault.

          Appellant’s
testimony was mostly consistent with Jefferson’s testimony.[5] 
He confirmed that Jefferson fought with Barbara, visited with another male, argued
with appellant while walking toward appellant’s house, and fell on the ground near
appellant’s house while he pointed his finger at her and screamed at her.  He
also agreed that he had required Jefferson to take off her shoes and that
Jefferson had tripped over the shoelaces because they were untied.  Appellant denied
that he had hit Jefferson but conceded that “it could have looked like [he] was
striking” her.  Although appellant said that he has never hit a woman, he
admitted that one of his felony convictions was for robbery where a woman
sustained bodily injury.  He said that during that offense, a codefendant
snatched the woman’s purse.

          According
to appellant, when Officer Johnson arrested him, she said, “I smelled alcohol. 
He’s definitely a beater.”  Appellant said that he and Officer Johnson have had
“a few run-ins” at the store where he and Jefferson bought food on the night of
his arrest.[6]

Procedural
history

          The
State charged appellant with assaulting Jefferson by striking her with his
hand.  The State’s charging instrument contained an enhancement paragraph
alleging that appellant had been previously convicted of a felony.  Appellant
pled not guilty, but the jury found him guilty.  Because appellant had already been
confined for an extended period, the trial court sentenced him to one day in
jail.  Appellant brought this appeal.

Evidentiary
Sufficiency

In our
due-process review of the sufficiency of the evidence to support a conviction,
we view all of the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Isassi v. State, 330
S.W.3d 633, 638 (Tex. Crim. App. 2010).  This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Isassi,
330 S.W.3d at 638.

          Appellant
assaulted Jefferson if he intentionally, knowingly, or recklessly caused bodily
injury to her.  See Tex. Penal Code Ann. § 22.01(a)(1) (West 2011); Smith
v. State, 352 S.W.3d 55, 62 (Tex. App.—Fort Worth 2011, no pet.).[7] 
“Bodily injury” means “physical pain, illness, or any impairment of physical
condition.”  Tex. Penal Code Ann. § 1.07(a)(8) (West Supp. 2011).  

          Certainly,
the evidence conflicted concerning whether appellant caused bodily injury to
Jefferson by striking her with his hand.  This conflict compelled the jury to
believe either Officer Johnson (who said that she “clearly observed” appellant
strike Jefferson twice)[8] or Jefferson and
appellant (who each said that appellant had not hit Jefferson).  By returning a
guilty verdict, the jury indicated its choice to believe Officer Johnson.  See
Baker v. State, No. 02-10-00079-CR, 2010 WL 4813117, at *6 (Tex. App.—Fort
Worth Nov. 24, 2010, pet. ref’d) (mem. op., not designated for publication). 
The jury may have based its choice on the fact that appellant and Jefferson
each had a reason to deny the assault.  Jefferson stated that on the date of
the trial, she still had romantic feelings for appellant and that appellant had
reciprocated those feelings.  Jefferson admitted that she knew that appellant
could go to prison for violating his parole by committing assault, and she
conceded that she did not want him to go to prison.  Appellant testified that
he was on parole for a twenty-year drug-related sentence that he had received
in 2007.  He said that he had already been to prison “numerous times,” and he
was concerned that if he returned to prison, his elderly mother could “die on
[him].”  The jury may also have discredited appellant’s testimony because it
was impeached by his prior convictions.  See Tex. R. Evid. 609(a); Miller
v. State, 196 S.W.3d 256, 267–68 (Tex. App.—Fort Worth 2006, pet. ref’d)
(mem. op.).

          The
trier of fact is the sole judge of the weight and credibility of the evidence. 
See Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); Brown v. State,
270 S.W.3d 564, 568 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct.
2075 (2009); see also Franklin v. State, 193 S.W.3d 616, 620 (Tex. App.—Fort
Worth 2006, no pet.) (explaining that the jury may “accept or reject any or
all of the evidence of either party”) (emphasis added); Dotson v. State,
146 S.W.3d 285, 295 (Tex. App.—Fort Worth 2004, pet. ref’d) (stating that a
jury is free to “accept or to reject all or part of . . . defensive
evidence”).  Thus, when performing an evidentiary sufficiency review, we may
not re-evaluate the weight and credibility of the evidence and substitute our
judgment for that of the factfinder.  Williams v. State, 235 S.W.3d 742,
750 (Tex. Crim. App. 2007).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@  Hooper v. State, 214 S.W.3d 9,
16–17 (Tex. Crim. App. 2007).  We must presume that the factfinder resolved any
conflicting inferences in favor of the verdict and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Isassi, 330 S.W.3d at 638.

          We
recognize that the record discloses evidence and inferences that weigh against
appellant’s conviction.  But viewing the evidence in the light most favorable
to the jury’s verdict, and resolving the conflicting testimony in favor of the
verdict, we hold that a rational jury could have found that the State proved
the elements of assault beyond a reasonable doubt.  See Jackson, 443
U.S. at 326, 99 S. Ct. at 2793; Isassi, 330 S.W.3d at 638 (explaining
that an appellate court should not have a role of becoming a “thirteenth juror”);
Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988) (stating
that it “is not the reviewing court’s duty to disregard, realign or weigh
evidence” and that “[c]oncrete application of the Jackson standard is
made by resolving inconsistencies in the testimony in favor of the verdict”); see
also Stewart v. State, No. 11-09-00181-CR, 2011 WL 704411, at *1 (Tex. App.—Eastland
Jan. 13, 2011, no pet.) (mem. op., not designated for publication) (rejecting a
defendant’s evidentiary sufficiency challenge and affirming an assault
conviction although the victim denied suffering pain as a result of the
defendant’s actions).  Therefore, we conclude that the evidence is sufficient
to sustain appellant’s conviction, and we overrule appellant’s only issue.

Conclusion

          Having
overruled appellant’s issue, we affirm the trial court’s judgment.

 

PER CURIAM

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  March 8, 2012









[1]See Tex. R. App. P. 47.4.





[2]Officer Kaether testified
that he saw appellant standing over Jefferson but did not witness the assault. 
He confirmed that Jefferson was crying and was holding her mouth, which had fresh
blood in it, but he said that he did not see her spitting blood.





[3]Appellant testified that
he had previously dated Barbara.





[4]Appellant was on parole
for a drug conviction.  He had previously been convicted of two robberies and
several drug-related offenses.





[5]Jefferson testified that
appellant had been working on the date of the assault; appellant testified that
he had not been working and had spent the entire day with Jefferson.





[6]Officer Johnson testified
that she did not remember any particular interactions with appellant preceding
the offense at issue.





[7]Appellant does not
challenge the sufficiency of the evidence to prove that he and Jefferson had a
dating relationship.  See Tex. Penal Code Ann. § 22.01(b)(2).





[8]Officer Johnson appeared
to initially testify that she saw both of appellant’s punches before telling
Officer Kaether to turn the patrol vehicle.  Officer Johnson later testified
that she saw one punch, turned, and then saw the second punch from a closer
distance.  Despite this apparent inconsistency about the sequence of the
assault, as we explain below, the jury was authorized to accept Officer
Johnson’s generally consistent testimony that appellant hit Jefferson twice.