**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-23-00055-CR**
_____

**DENISE RENEE ROGERS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the County Court at Law No. 4
Montgomery County, Texas
Trial Cause No. 21-361687

**MEMORANDUM OPINION**

Appellant Denise Renee Rogers was charged with harassment. Tex. Penal Code Ann. § 42.07. Rogers pleaded not guilty, but a jury found her guilty as charged. Pursuant to an agreement between Rogers and the State, Appellant withdrew her election to the jury for sentencing and the trial court assessed punishment at one-hundred eighty days in county jail, probated for a period of one year, and a five-hundred dollar fine. In one issue, Rogers complains that the trial court erred by

1

overruling Rogers's objection to evidence of extraneous bad acts which she argues should have been excluded pursuant to Texas Rules of Evidence 404(b) and 403. For the reasons discussed below, we affirm.

Background

*Doug Franklin* and Rogers share a property line.[1] Franklin uses his property to store trailers and campers, and a few individuals live in campers on the property on month-to-month contracts. Rogers uses her property to operate a dog grooming business, and she rents out the residence on the property. In 2019, Rogers began to develop RV sites at the back of her property, and she wanted to use Franklin's driveway to provide access to the sites because her residence obstructed RV access. When Franklin told her no, Rogers asked if they could split the cost of moving the driveway so it could serve both properties. Franklin again told her no. When she continued to drive across his property, Franklin placed cinder blocks in his driveway to make it more difficult for Rogers to do so.

According to Franklin, the first time he and Rogers had a phone conversation, "it didn't go very healthy. Then we would have a better one and then it got very left

---

[1]To protect the identity of the victim of the information, we use a pseudonym for his name. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

field." Rogers began making accusations against Franklin as well as demanding that Franklin put up a fence between their properties. Rogers sent Franklin several lengthy text messages from a period spanning June 21, 2019, to March 27, 2021. Franklin rarely responded. Franklin called the sheriff's office between twenty and thirty times in response to Rogers's actions.

Franklin testified Rogers's requests were initially relatively polite, but their communications soon escalated when Rogers told Franklin she had a nude picture of him on her phone that had been shared by a woman named Robin. In another instance, Rogers demanded that Franklin put a fence up because trash had blown from Franklin's property onto her property. Rogers claimed to have videos of Franklin's guests leaving trash that would sit for days before blowing onto her property. Rogers told Franklin that she would be conducting video surveillance to obtain the license plate numbers of every vehicle that pulled up next to her property, taking a personal interest in how Franklin's property was built, and contacting the municipalities which would cost Franklin a "pretty penny."

Rogers texted Franklin that she observed drug dealing on Franklin's property and claimed to have video evidence of such activity. Rogers never provided Franklin with videos of any drug deals nor did Franklin ever observe such activity. Rogers accused Franklin of telling a man named Jerry that Franklin had sex with Rogers and

that Franklin called her a "loose woman." She alleged that a woman was raped on Franklin's property and that Franklin knew about it and failed to report it. She texted Franklin:

> You better hope and pray, that you inciting your male drug head tenants – by telling them that you've had sex with me and that I'm loose – doesn't get me raped [Doug]…you will rue the day!!

Franklin felt threatened by the text messages. He believed violence would ensue and he was concerned he would be held responsible for allegations Rogers was fabricating. He felt targeted by Rogers's text messages but did not block her telephone number because he was concerned for his safety and he "needed to see which direction she was going."

Franklin never received any surveillance videos from Rogers despite her claims that she had such videos. Rogers demanded that Franklin install a fence within twenty days or she would reach out to her county commissioner about Franklin's "unpermitted" RV lot, reach out to animal control to check records of "loose dogs" coming onto Franklin's property, call law enforcement and show them her evidence of illegal crimes, ask for a restraining order and provide her "documentation" to the district attorney.

According to Franklin, Rogers's behavior escalated after he refused to build the fence. He testified that in November 2020, she began placing feces in

4

Tupperware buckets which she placed at the back of her property, about thirty feet away from one of Franklin's RV spots. She then ran a 200-foot extension cord from her property to the feces and placed a heating lamp over the buckets, drawing flies and insects and making the buckets emanate a foul odor. When there was a heavy rain, watery feces would flow onto Franklin's property.

Rogers placed multiple signs by the buckets of feces which consisted of "random statements of stuff" in an attempt to communicate to Franklin and his guests. In November 2020 and December 2020, she relocated these signs to the heavily travelled roadway in front of the property. Franklin testified that the text messages, signs, buckets of feces, and a letter he received in the mail from Rogers at his home address made him feel threatened and afraid for his safety. He said he felt alarmed, annoyed, tormented, embarrassed, offended, and harassed by Rogers's actions as well as by her text messages.

Rogers complains that the trial court erred when it admitted evidence of what she argues were "extraneous bad acts." These include: (1) Rogers's implied threat to release nude pictures of Franklin in a telephone conversation; (2) Rogers's posting inflammatory signs all around Franklin's property; and (3) Rogers's putting buckets of feces that she labelled as "compost" along the property line.

5

## Analysis

Evidence of a crime, wrong, or other bad act is not admissible to prove a person's character in order to show that, on a particular occasion, the person acted in conformity with that character, although this evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Tex. R. Evid. 404(b).

Evidence of extraneous crimes, wrongs, and other bad acts may be introduced if it constitutes "[s]ame transaction contextual evidence." *Mayes v. State*, 816 S.W.2d 79, 86 n.4 (Tex. Crim. App. 1991). Crimes are collectively referred to as same transaction contextual evidence when "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony…of any one of them cannot be given without showing the others." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (quoting *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000)). Same transaction contextual evidence is admissible only when the facts and circumstances of the charged offense "would make little or no sense without also bringing in that evidence[.]" *Id.* That is, same transaction contextual evidence is admissible only "where such evidence is *necessary* to the jury's understanding of the instance

offense[.]" *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993) (emphasis in original). Same transaction contextual evidence is admitted "because in narrating the one [offense] it is impracticable to avoid describing the other, and not because the other has any evidential purpose." *Mayes*, 816 S.W.2d at 86 n.4 (citations omitted). In other words, it is admissible "not for the purpose of showing character conformity, but to illuminate the nature of the crime alleged." *Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993).

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82-83 (Tex. Crim. App. 2016). A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement. *Id.* at 83. Before a reviewing court may reverse a trial court's evidentiary ruling, it must conclude that the trial court's ruling "was so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Id.* (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008)).

*Phone Calls*

During a phone call, Rogers told Franklin she had "stuff that, you know, if the community found out, that, you know, it would just ruin your name. You don't want to push me." Rogers claimed she received nude pictures of Franklin from a woman named Robin. Rogers hung up but then called back and changed her story and said

7

that she heard there was a nude picture and then followed up with a text message clarifying what she said. The trial court overruled Rogers's objection to the admission of this evidence, finding the telephone conversations were admissible because they were part of the same transaction and would give context and meaning to the text messages which otherwise would not have made sense.

*Buckets of "Compost"*

The trial court conducted a hearing outside the presence of the jury to consider the State's evidence regarding the buckets of "compost," focusing its inquiry on the timeframe between October 27, 2020 – the deadline Rogers gave Franklin to build the fence – and March 27, 2021 – the date Rogers sent her last message to Franklin. According to Franklin, in November 2020, right after Franklin failed to comply with Rogers's October 27, 2020, deadline to build a fence, Rogers placed Tupperware buckets full of feces she labelled as "compost" along the property line at the back part of Rogers's property. The buckets were roughly thirty feet away from the RV sites on Franklin's property and just inches off the property line. As time went on, Rogers added additional buckets of feces and added organic matter to the buckets. She then ran a 200-foot extension cord from her property to heat a lamp that she placed over the buckets, which "drew flies, unwanted insects, other animals, as well as the aroma, the scent that was cast out by this heating of the feces." After it rained,

8

the watery feces would flow onto Franklin's property. The trial court overruled Rogers's objection to the admission of this evidence, finding these extraneous bad acts were relevant to whether harassment occurred, and were probative of Rogers's intent to "abuse, torment, all of those feelings that…a reasonable person must find in determining whether the State has met their burden."

*Signs*

During the same hearing outside the presence of the jury the trial court also considered the State's evidence regarding Rogers's posting of signs, again focusing its inquiry on the timeframe between October 27, 2020 and March 27, 2021. Rogers began putting up signs beside the buckets of feces, which consisted of random statements trying to communicate to Franklin and his guests on his property. In November 2020 until the end of December 2020, Rogers relocated the signs to the main, heavily travelled roadway near her property. The signs included messages calling Franklin a slumlord. One message stated, "do not threaten me again or I will call in a real crime," which made Franklin scared because Rogers referenced in one of her texts that one of her tenants felt the need to buy a gun. Rogers also told Franklin through text that he would "rue the day." Another sign referenced that the FBI had been to his property and another sign stated that "a lady was raped" at Franklin's property. The trial court overruled Rogers's objection to the admission of

this evidence, finding Rogers's posting of the signs was contemporaneous with the text messages, showed intent, was relevant, and showed "the context [] and content of the text messages as they are alluding to there being demands that were not met."

Section 42.07(a)(7) of the Texas Penal Code provides that a person commits the offense of harassment if, by electronic communications, with the intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another. Tex. Penal Code Ann. § 42.07(a)(7). The State was required to prove that Rogers intended to harass, annoy, alarm, abuse, torment, or embarrass Franklin, and that Rogers's threats were reasonably likely to alarm him. *Id.*

The trial court may have reasonably concluded Rogers's actions towards Franklin were relevant to the issues of whether Rogers's texts to Franklin were sent with the "intent to harass, annoy, alarm, abuse, torment, or embarrass" him and whether the electronic communications were "reasonably likely" to have such an effect on Franklin. *See id.*; Tex. R. Evid. 401, 401(b); *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001); *Webb v. State*, 36 S.W.3d 164, 180 (Tex. App.— Houston [14th Dist.] 2000, pet. ref'd) (en banc). The trial court was within its discretion to conclude that the telephone conversation about the nude photo on

Robin's phone was necessary for the jury's understanding of a text message sent by Rogers in which she refers to the picture and that Rogers's placing buckets of feces along the property line and inflammatory signs near the road, having occurred contemporaneously with her repeatedly sending Franklin text messages, were part of a common scheme or plan to harass him. We conclude the trial court did not abuse its discretion by admitting the complained-of extraneous bad acts under Rule 404(b). *See* Tex. R. Evid. 404(b)(2).

Citing Texas Rule of Evidence 403, Rogers argues an overwhelming portion of the trial was spent discussing these bad acts which she claims were highly prejudicial and likely to cause the jury to make a decision on an improper basis. *See* Tex. R. Evid. 403 (relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or the needless presentation of cumulative evidence). As the opponent of the evidence, Rogers had the burden to demonstrate that the danger of unfair prejudice substantially outweighed the evidence's probative value. *See Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991). Under Rule 403, it is insufficient to show merely that the evidence is prejudicial, because "all evidence against a defendant is, by its very nature, designed to be prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013). Rather,

Rogers was required to show that she would be unfairly prejudiced by the evidence. When a trial court balances the probative value of the evidence against the danger of unfair prejudice, a presumption exists that favors the evidence's probative value. *Feldman v. State*, 71 S.W.3d 738, 754-55 (Tex. Crim. App. 2002). A trial court's Rule 403 balancing analysis generally includes, but is not limited to, four factors: (1) the probative value of the evidence; (2) the potential the evidence has to impress the jury in an irrational but nevertheless indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence to prove a fact of consequence. *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005).

After conducting a hearing outside the presence of the jury, the trial court excluded some of the State's evidence and admitted only those extraneous bad acts that the trial court believed were probative of intent since they occurred around the time of the text messages. The trial court may have reasonably concluded the admitted evidence was probative and necessary to the State's case since it was relevant to Rogers's intent and whether the texts were reasonably likely to harass, annoy or alarm Franklin. The trial court also may have reasonably concluded that the admitted evidence was not likely to create an irrational impression since the conduct in question was temporally and rationally related to the texts messages and could reasonably be construed as part of a common plan or scheme. Ultimately, the

12

trial court was within its discretion to conclude that any unfair prejudice from the admitted testimony did not substantially outweigh its probative value and that presentation of the evidence would not take an inordinate amount of time.

Additionally, at Rogers's request, the trial court gave the jury a limiting instruction, informing the jurors about the purpose of the evidence and warning that they should not consider it for any purpose unless from the evidence presented it found beyond a reasonable doubt that Rogers had committed the extraneous acts. This instruction minimized the prejudice associated with the extraneous acts. *See Miller v. State*, 196 S.W.3d 256, 268 (Tex. App.—Fort Worth 2006, pet. ref'd); *Simpson v. State*, 886 S.W.2d 449, 452 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *see also Robinson v. State*, 701 S.W.2d 895, 899 (Tex. Crim. App. 1985) ("A proper instruction on the limited use of an extraneous offense will also lessen the prejudice.") We must presume that the jury followed the trial court's instruction. *See Gamez v. State*, 737 S.W.2d 315, 324 (Tex. Crim. App. 1987). Therefore, we conclude the trial court did not abuse its discretion by admitting the complained-of extraneous bad acts under Rule 403. *See* Tex. R. Evid. 403; *see Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).

Because we find no error, we need not determine whether any such error was harmful, resulted in an improper verdict, or affected Rogers's substantial rights. *See*

Tex. R. App. P. 44.2(b); *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). That said, we also conclude Rogers's brief fails to present a harm analysis or explain how the admission of the complained-of evidence affected her substantial rights or resulted in an improper verdict. *Id.* We overrule Rogers's sole issue.

## Conclusion

The judgment of the trial court is affirmed.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on December 2, 2024
Opinion Delivered February 19, 2025
Do Not Publish

Before Golemon, C.J., Wright and Chambers, JJ.